**William Wesley HINES, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–333.**

Court of Appeals of Alaska.

Aug. 2, 1985.

Mary E. Greene, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J. and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

William Wesley Hines was convicted of one count of sexual assault in the first degree, AS 11.41.410(a)(1). He appeals contending that the trial court erred in failing to grant a mistrial and in failing to impose sanctions for the destruction of police interview notes. We affirm.

The facts of this case can best be understood in connection with the issues presented by Hines.

## I. FAILURE TO GRANT MISTRIAL

■ We first address Hines' argument that the trial court erred in failing to grant a mistrial. This is a matter committed to the sound discretion of the trial court. *Dyer v. State*, 666 P.2d 438 (Alaska App. 1983); *Roth v. State*, 626 P.2d 583, 585 (Alaska App.1981). In reviewing the exercise of trial court discretion regarding mistrials, we apply a clearly erroneous standard. *Dyer*, 666 P.2d at 453. Hines argues that two incidents required a mistrial. We will address each incident in turn.

### A. Conduct of State Trooper

First, on one occasion during the trial, when the judge, counsel, and Hines retired to an anteroom for a conference outside the hearing of the jury, a uniformed state trooper walked with Hines in front of the jury box and out the door of the courtroom. The previous day a different trooper had been in the courtroom and had not done this. Hines moved for a mistrial, alleging that the trooper's actions identified him as someone in custody to the jury, undermining the presumption of innocence and prejudicially affecting his right to jury trial. The trial court denied the motion but offered to give a cautionary instruction if the defense would submit one. Defense counsel decided this might do more harm than good and expressly declined to do so. The trial court did eliminate future problems by having the jury leave the courtroom, while the judge, counsel, the defendant, and the trooper kept their places. On appeal Hines contends that the trooper's actions were so egregious that a curative instruction would have been unavailing and reversal is mandated by prior decisions of the supreme court and this court. Hines cites *Anthony v. State*, 521 P.2d 486 (Alaska 1974); *Williams v. State*, 629 P.2d 54 (Alaska 1981); *Dunn v. State*, 653 P.2d 1071, 1085 (Alaska App.1982); and *Thomae v. State*, 632 P.2d 236 (Alaska App.1981). We believe Hines' reliance on these cases is misplaced.

The cases cited reflect concern that a defendant who appears at trial in an unkempt and slovenly way, *see Anthony*, 521 P.2d at 495–96, or whose witnesses appear in handcuffs or otherwise under restraint, *see Williams*, 629 P.2d at 51–56, will be treated by the jury as "habitual criminals" or potentially dangerous. If so, Hines reasons, the jury might pay less attention to the evidence in the case and simply assume he is guilty because he is a criminal. There is also a risk that a jury might convict him despite doubts about his guilt because it fears he is dangerous and should be incarcerated. Thus, he loses the benefit of the presumption of innocence, which requires that the jury determine guilt or innocence solely on the record presented to it. *See, e.g., Estelle v. Williams*, 425 U.S. 501, 504, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976) (prison clothes); *see also Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (defendant in restraints); Annot., 16 A.L.R. 4th 1356 (1982); Annot., 90 A.L.R.3d 17 (1979); Annot., 75 A.L.R.2d 762 (1961).

In *Anthony* and *Williams*, the supreme court essentially adopted the ABA's Standards Relating to Trial by Jury § 4.1 (Approved Draft 1968).[1]

---

1. The standards have been revised, and § 4.1    now appears as ABA Standards Relating to Trial

In this case, we are concerned with standard 4.1(c) dealing with physical restraint. Particularly significant is the commentary to this section which reads in part:

The reasoning behind the rule is that physical bonds may create prejudice in the minds of the jury against one so restrained and may confuse or embarrass the mental faculties of the restrained party. [Citation omitted.] On this reasoning, the rule has also been applied to witnesses for the defendant, and similar analysis supports the view that ordinarily there should not be an excessive show of force through the attendance at the trial of a great many law enforcement officers, *e.g.*, *People v. Harris*, 98 Cal.App.2d 662, 220 P.2d 812 (1950).

The standard applies to *all* defendants and witnesses, for the rationale of the rule, as stated above, applies to all such persons. Because the rule rests only in part upon the possibility of jury prejudice, it should not be limited to jury trials. The restraints in question includes shackles (which would encompass all forms of handcuffs, leg irons, restraining belts, and the like), a gag (sometimes employed when the defendant has seriously disrupted the proceedings [citation omitted]), *and the presence of many law enforcement officers. Existing law on the latter form of restraint is somewhat ambiguous, but it would seem that a showing of need should be required whenever custodial officials have decided to subject a particular defendant or witness to a guard beyond that customarily employed.*

by Jury 15–3.1 (1982). The former standard provided:

4.1 Custody and restraint of defendants and witnesses.

(a) During trial the defendant should be seated where he can effectively consult with his counsel and can see and hear the proceedings.

(b) An incarcerated defendant or witness should not be required to appear in court in the distinctive attire of a prisoner or a convict.

(c) Defendants and witnesses should not be subjected to physical restraint while in court

ABA Standards, *supra*, Commentary at 94 (emphasis supplied, footnote omitted).

The commentary supplements the foregoing with a footnote which reads:

The issue [number of guards constituting restraint] has been raised in a variety of situations ranging from one deputy with a firearm, *State v. Daniels*, 347 S.W.2d 874 (Mo.1961), to 15 or 20 officers stationed about the court, *Goodwin v. State*, 121 Tex.Crim.[R]. 335, 38 S.W.2d 806 (1930). In the cases where only a few officers were present the appellate courts commonly dispose of the matter by simply stating that such circumstances do not support an inference of prejudice.

*Id.*

It is in the context created by the ABA Standards that the following language in *Anthony v. State*, upon which Hines relies, must be interpreted.

A defendant is presumed innocent throughout the trial, and he should be permitted to face the jury with the appearance and dignity of a free and innocent man.... Aside from being allowed his own attire, the defendant upon retrial should also be permitted to make himself clean and presentable. He should be allowed to shave and to shower before appearing in court. In the courtroom, *guards should remain outside the observation of the jury*, and should deliver the defendant to the counsel table before the jury's arrival if necessary; manacles, shackles and other physical restraints are, of course, to be avoided. Deviation from these standards is justified only to

unless the trial judge has found such restraint reasonably necessary to maintain order. If the trial judge orders such restraint, he should enter into the record of the case the reasons therefor. Whenever physical restraint of a defendant or a witness occurs in the presence of jurors trying the case, the judge should instruct those jurors that such restraint is not to be considered in assessing the proof and determining guilt.

*ABA Standards Relating to Trial by Jury* § 4.1 (Approved Draft 1968).

protect the safety and decorum of the court, to prevent a threatened escape, or to respond to some other manifest necessity.

521 P.2d at 495–96 (emphasis supplied, footnotes omitted).

We recognized the limited significance of the dictum regarding armed guards in *Dunn v. State*, where we said:

We believe that, in assessing questions concerning the appearance before jurors of defendants who are incarcerated, our focus must be fixed upon a practical assessment of whether a defendant's treatment in the individual case would reasonably have led a jury to conclude that he was being held in custody, subjected to restraints or kept under a level of supervision indicating a belief on the part of the court in the defendant's guilt.

653 P.2d at 1086.

■ The decisions of the United States Supreme Court, the Alaska Supreme Court, and this court all criticize law enforcement conduct that clearly, continuously, and unequivocally conveys to the jury the impression that the defendant is dangerous or is a criminal. Wearing prison clothes or being shackled in court clearly meets this test. In contrast, a single incident in which a police officer followed Hines, counsel, and the judge into an anteroom hardly rises to the level of prejudice condemned in the ABA Standards and the cited court decisions. The trial court did not err in denying a motion for mistrial on this basis.

### B. Reference to Prior Convictions

L.W., the victim, and Hines' sister worked in the same beauty salon in Fairbanks and were friends. Before reporting the rape L.W. discussed what had occurred with her sisters. During the course of the trial, the prosecution called L.W.'s sister to the stand. On cross-examination the following colloquy occurred:

Q [defense counsel] Isn't it true that she [L.W.] indicated she wasn't sure she'd been raped?

A [L.W.'s sister] No. She said that she wasn't sure, because of her affiliation with [Hines' sister].

Q Did she indicate to you why she was concerned about [Hines' sister] getting in trouble because [L.W.] had been raped?

A Well, because—from what [L.W.] had said—excuse me—[Hines] had been—had prior offenses, and ...

Defense counsel objected at this point and the matter was taken up outside the presence of the jury. The defense moved for a mistrial. The prosecutor said he had no reason to expect L.W.'s sister's response to the question, though he conceded that he knew L.W. was aware of Hines' criminal record and that she had indicated the possibility of mentioning it if she were asked similar questions. The trial court denied the motion for mistrial and overruled the objection to the testimony. Defense counsel asked for a cautionary instruction, which the court gave, telling the jury that this evidence related only to the alleged victim's state of mind when she was talking to her sister. When the jury returned, L.W.'s sister was allowed to complete her answer explaining that L.W. feared for Hines' sister because of Hines' prior record, since Hines and his sister lived in the same house.

■ We conclude that the trial court did not abuse its discretion in denying a mistrial. Generally, a curative instruction will suffice to remove prejudicial evidence from a jury's attention. *See Roth v. State*, 626 P.2d 583, 585 (Alaska App.1981). In this case, the evidence came in on cross-examination and was clearly responsive to the question put. In reaching our conclusion, we find *Preston v. State*, 615 P.2d 594, 603–04 (Alaska 1980), particularly persuasive.

Preston obtained a pretrial order preventing the prosecution from introducing evidence of her prior conviction for receiving stolen property. During the direct examination of a prosecution witness, the following exchange occurred:

Q [prosecutor] What day was that that you took it [the stolen property] out in the woods?

A [witness] A few days after. Well, whatever day it was that her [Preston's] probation officer came out.

615 P.2d at 603.

The supreme court affirmed the trial court's denial of a resulting motion for mistrial. The court stated:

We find no error in this denial. The trial judge is granted discretion in admitting or rejecting evidence of a defendant's prior convictions for a proper purpose. The purpose of the protective order was to preclude the jury from improperly considering evidence of Preston's prior conviction for an unrelated offense as bearing upon her guilt in the present case. Although revealing substantive evidence of appellant's earlier conviction as proof of her criminal disposition would clearly violate Alaska Rule of Evidence 404(b), we cannot say that the simple reference at trial to Preston's probation was a substantial violation of the protective order.

We also note that this occurred in a seemingly unintentional fashion. There is no evidence of any prosecutorial misconduct which would involve other concerns on review. However, we think that especially when there is an outstanding protective order, the parties should instruct their witnesses not to discuss any forbidden topics. The mention of Preston's probationary status neither informed the jury of the substance of the underlying conviction nor so prejudiced the defense as to demand a mistrial or a finding that trial court abused its discretion in ruling on the motion.

615 P.2d at 603–04 (footnotes omitted).

In this case, as in *Preston*, there was but a single reference to prior offenses which, in our view, did not so prejudice the defense as to demand a mistrial. We find no error. *See also Fields v. State*, 629 P.2d 46, 48–52 (Alaska 1981).

## II. DESTRUCTION OF EVIDENCE

Hines next argues that the trial court erred in failing to sanction the state for destroying material evidence—the notes made by the officer at the initial interview with L.W. In order to place this contention in context, it is necessary to briefly review the evidence at trial. L.W. and Hines were casual acquaintances. They had met when Hines visited his sister in the beauty shop where she and L.W. worked. Hines and L.W. had never dated, though apparently there was some mutual attraction.

On Saturday, August 13th, Hines met L.W. and his sister at the beauty shop. They talked, and eventually went to Hines' sister's apartment for lunch. Later on that afternoon, Hines went to the beauty shop hoping to obtain transportation from his sister. When he arrived he learned that she had left and he approached L.W. for a ride. From this point the evidence is in conflict. Hines contends that L.W. granted him the ride, and ultimately engaged in sexual contact and consensual sexual intercourse. L.W. contends that Hines forced himself into her car, kidnapped her, and ultimately raped her. The jury acquitted Hines of kidnapping, but convicted him of sexual assault.

Hines argues that L.W.'s testimony was not corroborated, that she was substantially impeached, and that she conceded on cross-examination that she had misrepresented the extent of her prior contacts with Hines. In Hines' view, the only physical evidence that substantiated L.W.'s testimony was a piece of plastic strapping material which was found at the scene of the alleged rape. L.W. testified at trial that Hines had threatened to tie her up with the tape if she resisted. When L.W. went to the scene of the alleged assault with police officers the day following the alleged rape, she found the tape. It was the defense's theory that L.W. did not mention the strapping material in her initial interviews with the investigating officer, but rather made up the story when she and the officer went to the scene the day after the rape, and she saw the material there. The defense's the-

ory was supported by the fact that, though the investigating officer admitted that it was his usual procedure to ask a suspect questions about all important details as related by the alleged victim, he did not ask Hines anything about the strap when he first interviewed Hines on Saturday. From this, the defense infers that the investigating officer was unaware of the tape when he questioned Hines because L.W. did not mention the strapping tape to the investigating officer when he first interviewed her. In Hines' view, the issue could easily have been resolved if the investigator had retained his notes or recorded his interviews with L.W. He did neither. He had destroyed his notes in reliance on departmental policy, and the district attorney's office had directed the police not to record statements from alleged victims of sexual assault. Hines argues that the failure to record the interview with L.W., compounded by the destruction of the officer's notes of that interview, served to deny him discoverable exculpatory material in violation of the state and federal constitutions. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); AS 12.45.060 (the "Little Jencks Act"); Alaska R.Crim. P.16; *Putnam v. State*, 629 P.2d 35, 43–44 (Alaska 1980). In our recent decision in *State v. Contreras*, 674 P.2d 792 (Alaska App.1983), *petition for hearing granted* (Alaska, April 5, 1984), we addressed this issue and reached the following conclusions:

> Alaska cases discussing the prosecution's failure to preserve evidence require a finding that the evidence would have affected the outcome before a sanction, including suppression of evidence, is warranted. Where a specific rule or court decision requires preservation of certain evidence, and the defendant makes a timely request for that evidence but it is missing, prejudice to the defendant will be presumed unless the state sustains the burden of proving that it acted in good faith and that the evidence, if preserved, would not have helped the defendant. If, after considering the whole record, the court is in doubt regarding prejudice to the defendant or the prosecution's good faith, then a sanction is warranted. *See Putnam v. State*, 629 P.2d 35, 44 n. 18 (Alaska 1980). Where no specific rule or court decision requires the prosecution to preserve the evidence in question, however, the defendant bears the burden of proving that, if preserved, the evidence would have been exculpatory, *see* Alaska R.Crim.P. 16(b)(3), and that the prosecution should have recognized that it might be exculpatory and preserved it. *See Nicholson v. State*, 570 P.2d 1058, 1064 (Alaska 1977). Similarly, where there is no timely request for the evidence, the defendant must establish the materiality of the missing evidence. *See Maloney v. State*, 667 P.2d 1258, 1263–67 (Alaska App. 1983); *Carman v. State*, 658 P.2d 131, 139–40 (Alaska App.1983).

674 P.2d at 821.

■ Hines has failed to show that the material allegedly destroyed would have affected the outcome of his case. He therefore can not prevail. His reliance on *Lauderdale v. State*, 548 P.2d 376, 381 (Alaska 1976), for the proposition that the mere possibility that lost evidence would have been helpful to the defense is sufficient, is misplaced. *See Wright v. State*, 501 P.2d 1360, 1371 (Alaska 1972). *Lauderdale* is *sui generis*. In *Lauderdale*, the supreme court dealt with the preservation of a breathalyzer ampoule, in the context of a prosecution for driving while intoxicated. It found that the "missing evidence" was essentially the only evidence possibly bearing upon the issue in question—the accuracy of the breathalyzer machine. It further found that the state's whole case rested in effect on the accuracy of the breathalyzer machine. *Lauderdale* has no bearing on the instant question which deals with the credibility of L.W., since in effect all of the evidence of the case is relevant to determining her credibility. *Lauderdale*, 548 P.2d at 382 n. 11 (distinguishing *Wright* on this basis). We therefore find no error.

The judgment of the superior court is AFFIRMED.

BRYNER, Chief Judge, dissenting.

I dissent.

The majority of the court holds that the trial court did not err in refusing to grant a mistrial when conduct by an Alaska State Trooper revealed to the jury that Hines was in custody. I disagree.

In *Anthony v. State*, 521 P.2d 486 (Alaska 1974), the Alaska Supreme Court stated:

A defendant is presumed innocent throughout the trial, and he should be permitted to face the jury with the appearance and dignity of a free and innocent man.... We agree with the United States Court of Appeals for the Fifth Circuit that:

It is inherently unfair to try a defendant for crime while garbed in his jail uniform.... *No insinuations, indications or implications suggesting guilt should be displayed before the jury other than admissible evidence and permissible argument.*

Aside from being allowed his own attire, the defendant upon retrial should also be permitted to make himself clean and presentable. He should be allowed to shave and to shower before appearing in court. In the courtroom guards should remain outside the observation of the jury, and should deliver the defendant to the counsel table before the jury's arrival if necessary; manacles, shackles and other physical restraints are, of course, to be avoided.

*Id.* at 495–96 (footnotes omitted), *quoting Brooks v. Texas*, 381 F.2d 619, 624 (5th Cir.1967) (emphasis added).

In *Dunn v. State*, 653 P.2d 1071, 1086 (Alaska App.1982), this court had occasion to consider the extent to which *Anthony* governed the conduct of uniformed guards and officers who are present in the courtroom to maintain control over the defendant during trial. We held, in relevant part:

We believe that, in assessing questions concerning the appearance before jurors of defendants who are incarcerated, our focus must be fixed upon a practical assessment of whether a defendant's treatment in the individual case would reasonably have led a jury to conclude that he was being held in custody, subjected to restraints or kept under a level of supervision indicating a belief on the part of the court in the defendant's guilt.

In the present case it is difficult to tell from the record exactly what the trooper did or to gauge the precise impact on the jury of his conduct. It is sufficient to note, however, that those who are present and actually saw what happened—Hines' trial counsel, the prosecutor and the trial judge—all apparently recognized that the trooper's actions probably communicated to the jury the fact that Hines was in the trooper's custody. On appeal, the state does not contend otherwise.

Under the circumstances, I think it is evident that the trooper's conduct violated the holdings of *Anthony* and *Dunn:* it is in effect undisputed that his conduct "would reasonably have led a jury to conclude that [Hines] was in custody, subjected to restraints or kept under a level of supervision indicating a belief on the part of the court in the defendant's guilt." *Dunn,* 653 P.2d at 1086. Thus, the primary question remaining in this case is whether a mistrial was necessary in light of the violation.

In resolving this question I think it is crucial to note at the outset that the conduct giving rise to an appearance of custody here could readily have been avoided by a clear policy, adopted in advance of trial, establishing appropriate procedures for the handling of the accused. Both this court and the Alaska Supreme Court have consistently emphasized that the trial court bears the primary responsibility for adopting procedures to avoid jeopardizing the accused's right to rely on the presumption of innocence throughout trial. *See, e.g., Williams v. State,* 629 P.2d 54, 57 (Alaska 1981); *Dunn v. State,* 653 P.2d at 1086; *Thomae v. State,* 632 P.2d 236–41 (Alaska App.1981). In this case the trial court did

not carry out its responsibility. Instead, the court apparently allowed the troopers to determine and follow their own procedures for supervising prisoners in the courtroom.

There is no reason to believe that inadvertent disclosure to the jury of the fact that a defendant is incarcerated should be an inevitable, or even a frequent, occurrence. In any event, this is not a case in which it is even arguable that such a disclosure occurred despite reasonable precautions; nor is there any reason to believe that a similar disclosure would be made upon retrial.

The evidence in this case was extremely close at trial. The issue of guilt turned almost exclusively on whether the jury would believe Hines' testimony or the testimony of the victim. The victim's testimony was substantially impeached. In these circumstances, even the slightest indication that Hines was in custody could have led to significant jury prejudice. Jurors could readily have inferred that, if Hines was apparently in custody, it must be because he was dangerous or because the court believed him to be guilty. Any juror drawing such an inference might understandably become reluctant to believe Hines' version of events. The point bears emphasis that the type of prejudice at issue in this case lies in the inherent psychological impact on the jury which is engendered by any appearance that the defendant is actually in custody during the course of trial. *Cf. Williams v. State*, 629 P.2d at 57–58 (prejudice to a defendant of requiring witness to appear in handcuffs lies in inherent psychological impact, not merely in the fact that the jury might suspect witness committed a crime).

Nor do I view the trial court's offer of a curative instruction to be sufficient in this case to eliminate or reduce the potential for prejudice. *Cf. McBeth v. State*, 652 P.2d 120, 126 (Alaska App.1982) (failure to object to a question was not significant where the question itself was prejudicial and an objection, if sustained, would not have cured the potential prejudice). Once the jury saw that Hines was in custody an instruction would have done little to cure the damage. To the contrary, an instruction to the jury would have served only to emphasize, in unmistakable terms, the fact that Hines was in custody.

In summary, I believe the record demonstrates a violation of the rule in *Anthony*. Given the extreme closeness of the evidence at trial, the avoidable nature of the violation, and the trial court's failure to take precautions in advance of trial to avoid such a violation, I would hold that denial of Hines' motion for a mistrial was clearly erroneous and an abuse of discretion. *Maze v. State*, 425 P.2d 235, 237 (Alaska 1967); *Dyer v. State*, 666 P.2d 438, 453 (Alaska App.1983); *Roth v. State*, 626 P.2d 583, 585 (Alaska App.1981).