(43 P.3d 837)

No. 86,386

STATE OF KANSAS, *Appellee*, v. JAMES MCINTOSH, *Appellant*.

Opinion filed April 5, 2002.

*Paige A. Nichols*, and *Reid T. Nelson*, assistant appellate defenders, *Steven R. Zinn*, deputy appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith Schroeder*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before ELLIOTT, P.J., GREEN, J., and PADDOCK, S.J.

GREEN, J.: James McIntosh appeals his convictions of two counts of aggravated criminal sodomy and single counts of rape and aggravated indecent liberties with a child. On appeal, McIntosh argues that the trial court erred by (1) denying his motion for an independent psychological examination of the victim; (2) denying his motion for an independent physical examination of the victim; (3) excluding evidence that the victim had accused her brother of trying to molest her; (4) excluding evidence that the victim's mother accused McIntosh of molesting other children; (5) failing to dismiss the case because the police did not properly preserve evidence; (6) allowing an expert witness to describe the behavioral characteristics of sexually abused children; and (7) failing to give a multiple acts unanimity instruction. We disagree and affirm.

McIntosh lived with Zoe D., his girlfriend, from December 1995 until July 1999. After McIntosh moved out, Zoe's daughter, A.D., told her mother that McIntosh had sexually abused her. Zoe reported the sexual abuse to the police.

A.D. was interviewed by Detective Eric Buller, but the interviews were not recorded. A.D. told Detective Buller that McIntosh raped her using his finger and penis and that he anally and orally sodomized her. A.D. stated that the incidents occurred in several different locations throughout their residence and in the family van. A.D. also told the detective that the sexual abuse began when McIntosh moved into the house when A.D. was 7 years old and ended when McIntosh moved out of the house when she was 10 years old.

McIntosh was charged with five counts of rape, nine counts of aggravated criminal sodomy, five counts of aggravated indecent

liberties with a child, and two counts of aggravated indecent solicitation of a child. Two counts of aggravated criminal sodomy and two counts of aggravated indecent solicitation of a child were dismissed at the preliminary hearing. Single counts of aggravated criminal sodomy and rape were dismissed by the State after it conceded that it could not prove that those offenses occurred in Reno County, Kansas. A jury convicted McIntosh of two counts of aggravated criminal sodomy and single counts of rape and aggravated indecent liberties with a child. McIntosh was sentenced to 316 months' imprisonment.

*Independent Psychological Examination*

McIntosh argues that the trial court erred in denying his motion for an independent psychological examination of A.D. McIntosh portrays this issue as a matter of exclusion of evidence necessary to present his defense theory which would constitute a denial of his due process right to a fair trial. See *Chambers v. Mississippi*, 410 U.S. 284, 302, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973). Although McIntosh had a right to present his theory of defense, that right is subject to statutory rules and case law interpretation of the rules of evidence and procedure. See *State v. Thomas*, 252 Kan. 564, 573, 847 P.2d 1219 (1993). An examination of the record and pertinent authorities indicates that there is nothing more than an ordinary evidentiary ruling at issue. See *State v. Sperry*, 267 Kan. 287, 289, 978 P.2d 933 (1999). McIntosh cannot redefine the issue as a denial of the right to present a defense and thereby transform the issue from that of a simple evidentiary ruling into a constitutional issue.

In *State v. Gregg*, 226 Kan. 481, 487, 602 P.2d 85 (1979), the trial court denied the defendant's motion for psychiatric examination of the complaining witness in a sex crime case. The *Gregg* court stated that "[t]he question then becomes whether the trial court abused its discretion in the denial of the motion." 226 Kan. at 489; see *State v. Lavery*, 19 Kan. App. 2d 673, 676, 877 P.2d 443, *rev. denied* 253 Kan. 862 (1993). Judicial discretion is abused only when no reasonable person would take the view adopted by

the trial court. *State v. Williams*, 268 Kan. 1, 8, 988 P.2d 722 (1999).

To support his argument that the trial court erred in denying his motion for an independent psychological examination of A.D., McIntosh cites K.S.A. 2001 Supp. 60-235(a), which provides:

"When the mental or physical condition, including the blood group, of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined . . . ."

McIntosh's reliance on this statute is misplaced because the statute is a rule of civil procedure. In fact, the *Gregg* court stated that "[a] psychiatric examination of a *party in a civil action* may be ordered pursuant to K.S.A. 60-235 when the party's mental condition is in issue." (Emphasis added.) 226 Kan. at 485. The instant case, however, is a criminal matter. As such, A.D. is not a party to the action because the parties in a criminal case are the State and the defendant. See *State v. Dressel*, 241 Kan. 426, 432, 738 P.2d 830 (1987). As a result, McIntosh cannot rely on K.S.A. 2001 Supp. 60-235(a) to support his argument that the trial court erred in denying his motion for an independent psychological evaluation of A.D.

Nevertheless, McIntosh could compel a psychological examination under *Gregg*. The *Gregg* court held that "a trial judge has the discretion to order a psychiatric examination of the complaining witness in a sex crime case if the defendant presents a compelling reason for such examination." 226 Kan. at 489. Some of the factors cited by the *Gregg* court to be considered in determining if such compelling circumstances exist are the child victim's mental instability, the victim's lack of veracity, whether similar charges by the victim against other men were proven to be false, and any other reason why the victim should have been required to submit to such an examination. 226 Kan. at 490.

Here, McIntosh argues that an independent psychological examination was required because a State witness completed a sexual

abuse evaluation of A.D. and that he wanted his own expert to evaluate A.D. Specifically, McIntosh wanted an independent psychological examination of A.D. to determine whether A.D. suffered from post traumatic stress disorder as found by the State's witness. In addition, McIntosh wanted to ascertain the effect of the repeated questioning on A.D.'s memory of the alleged events. The trial court denied McIntosh's motion for a psychological examination of A.D. after finding that none of the factors cited by the *Gregg* court were argued by McIntosh.

We find that the trial court correctly determined that McIntosh failed to establish a compelling reason for A.D. to submit to an independent psychological examination. At the hearing on the motion for a psychological examination, McIntosh did not argue that A.D. was mentally unstable, that she lacked veracity, or that she had made false charges against other men. Moreover, the grounds argued by McIntosh did not constitute a compelling reason to require an independent psychological examination. McIntosh could have attacked the finding of post traumatic stress disorder without conducting an independent examination of A.D. Similarly, McIntosh could have cross-examined the State's witnesses concerning the psychological evidence as to the effect of repeated questioning on A.D.'s recollection of the alleged incidents. As a result, we find that McIntosh has failed to carry his burden to show that the trial court erred in denying his motion for an independent psychological evaluation of A.D.

## Independent Physical Examination

McIntosh also argues that the trial court erred in denying his motion for an independent physical examination of A.D. McIntosh claimed that an independent physical examination was necessary because the State's physician found evidence that A.D. had been sexually abused but that no photographs were taken of her injuries. McIntosh claims that the trial court's refusal to allow an independent physical examination of A.D. prevented him from presenting his theory of defense which resulted in a denial of his right to due process.

However, as discussed in the previous issue, McIntosh is attempting to transform an evidentiary issue into a constitutional one. As a result, the issue is not whether the trial court's denial of his motion for a physical examination of A.D. violated his due process rights. Instead, the issue is simply whether the trial court erred in denying McIntosh's motion for an independent physical examination.

To support his argument that the trial court had authority to require an independent physical examination of the victim, McIntosh relies on K.S.A. 2001 Supp. 60-235(a). However, as previously discussed, that statute is not applicable in the present case because it only applies to civil proceedings.

The Kansas appellate courts have not considered whether a trial court may permit a criminal defendant to conduct an independent physical examination of the victim. In denying McIntosh's motion for a physical examination of A.D., the trial court relied on *Gregg*, even though that case involved a psychological examination, not a physical examination. The trial court found that McIntosh failed to establish a compelling reason to require A.D. to submit to an independent physical examination. We find that although the trial court correctly denied McIntosh's motion for an independent physical examination of the victim, it assigned an erroneous reason for its decision. See *State v. Giles*, 27 Kan. App. 2d 340, 346, 4 P.3d 630 (2000).

McIntosh's motion for an independent physical examination of A.D. is simply a discovery effort. K.S.A. 2001 Supp. 22-3212 allows for limited pretrial discovery by the defendant in a criminal case. Although the statute permits discovery of "results or reports of physical or mental examinations," the statute does not mention independent physical examinations. See K.S.A. 2001 Supp. 22-3212(a). As a result, the issue is whether an independent physical examination is subject to discovery under K.S.A. 2001 Supp. 22-3212. Interpretation of a statute is a question of law, and our review is unlimited. See *State v. Sisk*, 266 Kan. 41, 43, 966 P.2d 671 (1998).

K.S.A. 22-3212 was interpreted in *Dressel*, 241 Kan. 426. In that case, the defendants sought to discover certain evidence which was

in the possession of the victim, the Cargill Corporation. Most of the evidence was in Cargill's possession and not in the possession of the State. When the defendants tried to compel discovery of certain items held by Cargill, the trial court consistently denied the motions because the court did not have jurisdiction to order Cargill, a nonparty, to participate in the discovery. Our Supreme Court affirmed the trial court's denial of the motions, holding that "[a] trial court has no authority to compel discovery from the complaining witness pursuant to K.S.A. 22-3212." 241 Kan. at 437.

Here, McIntosh's attempt to obtain an independent physical examination constituted an effort to compel discovery from the complaining witness which is prohibited under *Dressel*. Moreover, McIntosh was not simply attempting to obtain evidence that was in A.D.'s possession. Instead, McIntosh wanted A.D. to undergo an intrusive medical procedure. As such, the evidence sought by McIntosh has a vastly higher privacy quotient than the discovery sought in *Dressel*. As a result, we find that because a trial court lacks authority to compel discovery from a complaining witness under K.S.A. 2001 Supp. 22-3212, the trial court did not err in denying McIntosh's motion for a physical examination of A.D.

This holding is consistent with the maxim *espressio unius est exclusio alterius*, which means "the inclusion of one thing implies the exclusion of another. . . . Under this rule, when legislative intent is in question, we can presume that when the legislature expressly includes specific terms, it intends to exclude any items not expressly included in the specific list. [Citation omitted.]" *In re Marriage of Killman*, 264 Kan. 33, 42, 955 P.2d 1228 (1998). Because K.S.A. 2001 Supp. 22-3212 includes specific items that are subject to discovery by a criminal defendant, but excludes independent physical examinations, it is presumed that the legislature did not intend to permit discovery of independent physical examinations.

It is important to note that denying McIntosh the opportunity to conduct an independent physical examination of A.D. is not unfair. The objective results of the State's physical examination of A.D. were available to McIntosh under the standard rules of discovery. McIntosh was able to cross-examine the physician on the

results of that examination and defense experts could have reviewed and commented on those findings.

As a result, we find that under K.S.A. 2001 Supp. 22-3212, a criminal defendant is without authority to compel a complaining witness to submit to an independent physical examination.

*Prior Allegation of Attempted Sexual Abuse*

McIntosh next contends that the trial court erred in excluding evidence that A.D. accused her brother, W.D., of trying to molest her. At trial, McIntosh testified as follows:

"Q. And you're going to tell this jury under oath here that you did not do it?

"A. That's right. I did not do it. I can tell you some things. Ms. Cunning [the prosecutor] will probably object. When I lived in the house, [A.D.] came downstairs one morning and told her mother and I that [W.D.] had tried to molest her."

The State objected on the grounds of hearsay and the trial court sustained the objection.

McIntosh argues that the trial court's exclusion of this evidence constituted a denial of his fundamental right to present a defense. However, as was the case with McIntosh's previous issues, he is attempting to transform a simple evidentiary ruling into a constitutional issue.

The admission of evidence lies within the sound discretion of the trial court. An appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. One who asserts that the court abused its discretion bears the burden of showing such abuse of discretion. *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999).

The State argues that McIntosh failed to preserve this issue because he did not make a proffer as to the relevance or admissibility of the statement. "In an action tried by a jury, if an objection to a question propounded to a witness is sustained by the court, the examining attorney may make a specific offer of what the exam-

ining attorney expects to prove by the answer of the witness." K.S.A. 2001 Supp. 60-243(c).

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers." K.S.A. 60-405.

See *State v. Sherrer*, 259 Kan. 332, 338, 912 P.2d 747 (1996); *State v. Coleman*, 253 Kan. 335, 344, 856 P.2d 121 (1993). The standard for a satisfactory proffer is whether the proffer contains the substance of the excluded testimony. *Marshall v. Mayflower Transit, Inc.*, 249 Kan. 620, 623, 822 P.2d 591 (1991).

Here, through an unsolicited answer to a question, McIntosh testified that A.D. accused her brother of trying to molest her. However, McIntosh failed to make a specific offer as to what he expected to prove by this testimony. After the trial court sustained the State's objection, McIntosh's attorney should have requested permission to approach the bench with the prosecutor and inform the trial court of the intent to make a proffer. See Barbara, Kansas Rules of Evidence with Objections and Evidentiary Foundations § 1.12 (4th ed. 1997). McIntosh's defense counsel, however, failed to make a proffer. As such, we find that McIntosh failed to preserve the issue for appellate review.

Furthermore, McIntosh's unsolicited answer probably should have been struck and the jury admonished to disregard it. McIntosh's answer was obviously not responsive to the question.

## Allegation of Sexual Abuse Against Another Child

In addition, McIntosh argues that the trial court erred in failing to allow evidence that A.D.'s mother had accused him of molesting another child. Specifically, McIntosh contends that the trial court's error violated his fundamental right to present evidence in his own defense and violated his right of confrontation through effective cross-examination.

At trial, the following exchange occurred during defense counsel's cross-examination of Zoe:

"Q: Was there any discussion [with] Dee Dee, about whether James had been molesting [B] as well?

"Ms. Cunning: Objection, Your Honor, as to relevance.

"The Court: What is the relevance in that?

"Mr. Frieden: Well, I want to know whether she [is] talking to people that she is thinking that Mr. McIntosh has molested some other, perhaps this [B].

"The Court: What does that have to do with this —

"Mr. Frieden: Well.

"The Court: — case?

"Mr. Frieden: I want to find out whether she is saying anything about Mr. McIntosh of a negative connotation.

"The Court: I am going to sustain the objection."

On appeal, McIntosh argues that the testimony was relevant to his defense theory that A.D. leveled the allegations against him, in part, because of the influence and suggestion of her mother.

McIntosh argues that the trial court's exclusion of this evidence constituted a denial of his fundamental right to present a defense. However, as was the case with McIntosh's previous issues, he is attempting to transform a simple evidentiary ruling into a constitutional issue.

The admission of evidence lies within the sound discretion of the trial court. An appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. One who asserts that the court abused its discretion bears the burden of showing such abuse of discretion. *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999).

The State argues that McIntosh failed to preserve this issue because he did not make a sufficient proffer as to the relevance or admissibility of the statement. However, unlike the previous issue, we find that McIntosh's proffer was sufficient because he informed the court of what he expected to prove by Zoe's answer—that she was saying negative things about McIntosh.

Although McIntosh made an adequate proffer, we find that the trial court did not abuse its discretion in excluding the testimony

because the evidence was irrelevant. Relevant evidence means "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b); see *State v. Mims*, 264 Kan. 506, 512, 956 P.2d 1337 (1998). Here, the proffered statement has no tendency in reason to prove any material fact. The evidence is not a statement made by A.D. that could reflect on her credibility as a witness. Instead, the statement was allegedly made by A.D.'s mother and, if made, constitutes mere speculation on her part. If McIntosh was attempting to suggest that Zoe had hard feelings for McIntosh, he could have asked her directly regarding any negative bias. However, no such inquiry was conducted. Even if Zoe had made the statement at issue, it would be irrelevant to the issue of whether McIntosh molested A.D. We find that the trial court did not abuse its discretion in excluding the statement and, as a result, the trial court did not violate McIntosh's right of confrontation.

*Failure to Record Victim Interviews*

McIntosh further claims that the trial court erred in failing to dismiss his case because the investigating officer did not record his interviews with A.D. At trial, the investigating officer testified that he did not record his interviews with A.D. because he was "under standing orders from the District Attorney's Office to not record interviews, period." McIntosh contends that the State's directive that police not record victim interviews violated his due process rights and his right to effective cross-examination. Specifically, McIntosh argues that the failure to record the interviews was prejudicial because it is impossible to know whether A.D.'s allegation that McIntosh sexually molested her was the result of incompetent interview techniques.

McIntosh concedes that he failed to raise this issue before the trial court. "An issue not presented to the trial court will not be considered for the first time on appeal. [Citation omitted.]" *State v. Smith*, 268 Kan. 222, 243, 993 P.2d 1213 (1999). Nevertheless, McIntosh insists that the issue can be considered on appeal because it involves a constitutional question. This court may consider an issue that is raised for the first time on appeal "if consideration of the same is necessary to serve the ends of justice or to prevent

denial of fundamental rights." *State v. Mincey*, 265 Kan. 257, 267, 963 P.2d 403 (1998).

Apparently, the Kansas appellate courts have not addressed whether the failure to record an interview with a victim constitutes a denial of a defendant's constitutional rights. As a result, this is an issue of first impression in Kansas, and an examination of cases from outside this jurisdiction is insightful.

For example, the issue was considered in *State v. Weaver*, 290 Mont. 58, 964 P.2d 713 (1998). The defendant in *Weaver* appealed the denial of his motion to dismiss which was based upon the investigating officer's failure to record interviews with the victim. The defendant contended that there was a strong reason to believe that the interviews were unduly suggestive and coercive. On appeal, the defendant recommended that the court adopt a per se rule that absent exigent circumstances, child victim testimony may not be used in a prosecution such as his unless a contemporaneous record of the interview was made. While the *Weaver* court noted that "the better practice may be to create some record of the interviews," the court declined to adopt a per se rule that interviews of child sexual abuse victims must be recorded. 290 Mont. at 73. Instead, the *Weaver* court found that because police officers are not required to take initiative or even assist in procuring evidence on behalf of a defendant, the failure to record the interviews did not constitute destruction of material exculpatory evidence. The court concluded that "[t]here has been no indication in the present case that, had the interviews been recorded in some way, that evidence would have cleared Weaver of the charges against him." 290 Mont. at 75.

The issue was also addressed in *Hines v. State*, 703 P.2d 1175 (Alaska App. 1985). The defendant in *Hines* argued that he was denied discoverable exculpatory evidence when the interviewing officer failed to record an interview with the victim and destroyed his notes of that interview. Similar to the instant case, the district attorney's office had directed the police not to record statements from alleged victims of sexual assault. In finding that the defendant was not denied discoverable exculpatory material in violation of the state and federal Constitutions, the *Hines* court rationalized:

" 'Where no specific rule or court decision requires the prosecution to preserve the evidence in question . . . the defendant bears the burden of proving that, if preserved, the evidence would have been exculpatory, [Citation omitted] and that the prosecution should have recognized that it might be exculpatory and preserved it. [Citation omitted.] Similarly, where there is no timely request for the evidence, the defendant must establish the materiality of the missing evidence. [Citation omitted.]' " 703 P.2d at 1180.

Although the Kansas appellate courts have not considered the effect of the failure to record an interview with a victim, our Supreme Court has held that the destruction of evidence may rise to the level of a constitutional due process violation if the defendant can show that the evidence in question was destroyed in bad faith. See *State v. Lamae*, 268 Kan. 544, 998 P.2d 106 (2000). The *Lamae* court held:

"Where the State fails to *preserve* evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant, there is no due process violation unless the defendant shows bad faith on the part of the State.

"The presence or absence of bad faith by the State for purposes of the Due Process Clause necessarily turns on the State's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. The determination of whether the State acted in bad faith is one of fact." (Emphasis added.) 268 Kan. 544, Syl. ¶¶ 1, 2.

Stated another way, "[u]nless a defendant can show bad faith on the part of the state, failure to process potentially useful evidence does not constitute a denial of due process of law." *Taylor v. State*, 251 Kan. 272, Syl. ¶ 4, 834 P.2d 1325 (1992).

Although *Lamae* and *Taylor* involved the destruction of evidence and the instant case involves the preservation of evidence, this court nevertheless adopts the rationale from those cases. We hold that when police fail to record an interview with a victim, there is no due process violation unless the defendant shows bad faith on the part of the State. The presence or absence of bad faith for purposes of the Due Process Clause necessarily turns on the State's knowledge of the exculpatory value of the victim's interview at the time the State failed to record it. Moreover, the determination of whether the State acted in bad faith is one of fact.

We find that McIntosh's due process rights were not violated when the police failed to record the interview with A.D. due to an alleged request from the district attorney's office. First, McIntosh has not established bad faith on the part of the investigating officer for not recording the victim's interviews or on the part of the district attorney's office for supposedly issuing a "standing order" that no victim interviews be recorded. McIntosh did not question the State or the investigating officer as to the purpose behind this "standing order." Moreover, McIntosh has not established that the State or the investigating officer knew the exculpatory value of the interview at the time the police failed to record it. "The presence or absence of bad faith by law enforcement officers . . . turns on the . . . knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. 488 U.S. at 57, n." *State v. Lamae*, 268 Kan. at 551.

McIntosh also claims that the investigating officer's failure to record the interview with A.D. violated his right to effective cross-examination. To support this argument, McIntosh cites *United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967). The *Wade* Court noted that the Court will

"scrutinize any pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself." 388 U.S. at 227.

*Wade*, however, is distinguishable from the instant case. Most significantly, *Wade* involved the denial of counsel during a pretrial event. The instant case does not involve the denial of counsel, but rather involves the failure to preserve evidence. As a result, McIntosh's reliance on *Wade* is misplaced.

We find that despite the failure to record A.D.'s interviews with police, McIntosh was able to effectively cross-examine the investigating officer. Through cross-examination, the investigating officer admitted that had he recorded his interview with A.D. it would have shown whether A.D.'s sexual molestation allegations were the result of leading questions. Moreover, McIntosh questioned the officer as to the effect of leading questions on a victim's answers.

Through cross-examination, McIntosh was able to present evidence that showed that A.D.'s version of the events may not have been credible because of how the interview had been conducted. In addition, McIntosh had access to the investigating officer's report which contains a summary of the interviews with A.D. As a result, we find that McIntosh's right to effective cross-examination was not violated by the failure to record A.D.'s interviews with police.

Because McIntosh's due process rights and right to effective cross-examination were not violated by the failure to record the victim's interviews, we find that the trial court did not err in failing to dismiss the case.

*Expert Witness Testimony*

Next, McIntosh argues that the trial court erred in allowing expert witness testimony that A.D. fit the profile of a sexually abused child. Specifically, McIntosh contends that the trial court erred in allowing the expert witness testimony because the testimony was without sufficient foundation.

The admissibility of expert testimony lies within the broad discretion of the trial court. A party claiming an abuse of trial court discretion bears the burden of showing abuse of discretion. *State v. Rice*, 261 Kan. 567, 589, 932 P.2d 981 (1997). Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Williams*, 268 Kan. 1, 8, 988 P.2d 722 (1999).

At trial, the State asked John Theis, a licensed clinical social worker, whether there are common patterns of behavior among children who have been sexually abused. McIntosh objected, arguing that the question was vague and that Theis was not qualified on the subject. The trial court overruled the objection after finding that Theis was qualified to answer the question. Theis testified as follows:

"There are some common threads that run, you know, there is also some variability with that as well, but often children, they have been assaulted, have intrusive thoughts or images of the events; that's commonly known as flashbacks. That's the more vernacular term for that, common term for that, nightmares. Often they

suffer from extreme guilt. They can socially withdraw. They can have acting-out behavior, fire-setting, avoidance of school, aggressive behavior, inappropriate sexual acting-out, myriad of symptoms."

Theis further testified that he observed behaviors in A.D. that were consistent with a child who has been sexually abused. Specifically, Theis testified that A.D. emotionally broke down while she was talking about the sexual molestations. In addition, Theis stated that A.D. had sleep disturbance, feared for her safety, had distressing thoughts about the sexual assaults, distrusted others, was hyperviligant, felt guilt from being abused, and delayed disclosure of the abuse.

On appeal, McIntosh argues that the trial court erred in admitting this expert witness testimony. McIntosh insists that using the characteristics described by Theis as a way to identify child sexual abuse victims were improper because the profile of a sexually abused child has not been generally accepted.

An expert witness may give an opinion on an ultimate issue as provided in K.S.A. 60-456(d). However, such witness may do so only insofar as the witness aids the jury in the interpretation of technical facts or assists the jury in understanding the material in evidence. An expert's opinion is admissible up to the point where an expression of opinion would require him or her to pass upon the credibility of witnesses or the weight of disputed evidence. *State v. Colwell*, 246 Kan. 382, 389, 790 P.2d 430 (1990). An expert witness may not pass on the weight or credibility of evidence, for those matters are strictly within the province of the jury. *State v. Struzik*, 269 Kan. 95, 99, 5 P.3d 502 (2000).

The issue raised by McIntosh on appeal was previously considered in *State v. Reser*, 244 Kan. 306, 767 P.2d 1277 (1989). The *Reser* court addressed whether there was adequate foundation to qualify a social worker as an expert on the symptoms consistent with child sexual abuse. The expert testified that children who are sexually abused tend to report fairly consistent symptoms or common patterns of behavior resulting from the trauma, including failure to report the abuse immediately. The expert also testified that the complaining witness in that case exhibited behavior consistent with children who had been sexually abused. The *Reser* court found

that the expert witness, who was licensed as a clinical specialist, with a master's degree in social work, with years of experience in the field of child sexual abuse, and with world-wide recognition in the field of child sexual abuse, was "eminently qualified as an expert to testify as to the common patters of behavior resulting from child sexual abuse and that this victim had symptoms consistent with those patterns." 244 Kan. at 315.

McIntosh argues that this court should decline to follow *Reser* because the court failed to address whether characteristics of child sexual abuse have been generally accepted. McIntosh adds that *Reser* is a decade old, and research subsequent to the case shows that the supposed indicators of child sexual abuse cited in that case are not generally acceptable. While it may be true that there is not a universally accepted profile for sexually abused children, the *Reser* court held that expert testimony on common patterns of behavior by child victims of sexual assault is admissible as corroborating evidence of the abuse. This court is duty bound to follow our Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Maybin*, 27 Kan. App. 2d 189, 205, 2 P.3d 179, *rev. denied* 269 Kan. 938 (2000). Because our Supreme Court has not indicated that it is departing from its previous position that expert testimony on common patterns of behavior of child victims of sexual assault is admissible corroborating evidence, this court is duty bound to follow *Reser*.

McIntosh suggests that this court follow *State v. Bressman*, 236 Kan. 296, 689 P.2d 901 (1984). In *Bressman*, a physician testified that in her opinion the complaining witness had been raped. On appeal, the defendant argued that the trial court erred in admitting the expert witness testimony because it was without sufficient foundation. The *Bressman* court agreed, finding that the trial court committed prejudicial error in permitting the expert witness testimony because there was not a sufficient foundation to qualify the physician as an expert to give such an opinion since there was no showing that she was trained as an expert in psychiatry and that she had examined the complaining witness for the purpose of rendering a diagnosis as to whether she evidenced rape trauma syndrome. 236 Kan. at 304.

*Bressman*, however, is distinguishable from the instant case. The *Bressman* court recognized that under *State v. Marks*, 231 Kan. 645, 647 P.2d 1292 (1982), qualified expert psychiatric testimony regarding rape trauma syndrome is relevant and admissible. Although expert opinion testimony on rape trauma syndrome is admissible, the *Bressman* court found that the physician did not qualify as an expert witness because she was not trained in psychiatry and because she did not examine the victim for the purpose of rendering a psychiatric diagnosis. Accordingly, McIntosh's reliance on *Bressman* is misplaced because the case supports the admission of expert witness testimony as to the characteristics of sexual assault victims, provided the testimony is given by a qualified expert.

As a result, we follow our Supreme Court precedent in *Reser* and hold that qualified expert witness testimony on the common patterns of behavior of a sexually abused child was admissible to corroborate the complaining witness' allegations. In addition, we find that Theis was qualified as an expert on child sexual abuse. Theis was a licensed clinical social worker with a master's degree in social work and had regularly conducted sexual abuse evaluations. In fact, Theis' qualifications were very similar to the qualifications of the expert witness in *Reser*, who was found to be a qualified expert on child sexual abuse. Accordingly, we find that Theis was qualified as an expert witness in this case.

We further find that the trial court did not abuse its discretion in admitting Theis' testimony. There was a sufficient foundation for the expert witness testimony and Theis was qualified as an expert witness. Moreover, the expert testimony was not used to prove that A.D. was sexually abused, but rather was used to corroborate her allegations. As a result, we find that the trial court did not abuse its discretion in admitting expert witness testimony that A.D. fitted the profile of a sexually abused child.

## Multiple Acts Unanimity Instruction

Finally, McIntosh claims that his right to a unanimous verdict was violated by the trial court's failure to give a multiple acts unanimity instruction. He claims that it was impossible to ascertain whether the jury reached a unanimous verdict as to the specific

acts involved because the jury heard many different allegations of sexual abuse, but convicted him of each of the general allegations involving the widest time frame.

As a threshold matter, this court must first determine whether this is a multiple acts case. Whether this case is a multiple acts case is a question of law over which this court has unlimited review. See *State v. Hilson*, 28 Kan. App. 2d 740, 742, 20 P.3d 94, *rev. denied* 271 Kan. 1039 (2001). In a multiple acts case, more than one act is alleged and any one of them could support the crime charged. In these cases, the jury must be unanimous as to which act constitutes the crime. *State v. Kinmon*, 26 Kan. App. 2d 677, 678, 995 P.2d 876 (1999).

" 'To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt. [Citations omitted.]' " *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994).

In many child sexual abuse cases, the abuse " 'result[s] in an amalgamation of the crimes in the child's mind.' [Citation omitted.]" *State v. Arculeo*, 29 Kan. App. 2d 962, 974, 36 P.3d 305 (2001). In these cases, it is unfeasible for the State to elect a particular criminal act for each charge. Here, however, A.D. could remember specific acts committed against her by McIntosh. Accordingly, the State elected a particular criminal act for each of the counts against McIntosh.

Specifically, the State elected five specific instances upon which to base the charges that were submitted to the jury. The first incident was the first time McIntosh touched A.D. inappropriately. During this incident, McIntosh forced A.D. to touch his penis and put his penis in her mouth. This resulted in Count 1, aggravated indecent liberties, and Count 2, aggravated criminal sodomy-oral. The second incident occurred while A.D. and McIntosh were watching cartoons. McIntosh touched A.D.'s front private, had sexual intercourse with her, put his penis in her mouth, and made A.D. rub his penis. This resulted in Counts 3 through 6, two counts of aggravated indecent liberties, and single counts of rape and aggravated criminal sodomy-oral. The third incident occurred when

A.D. was asleep on the couch and McIntosh digitally penetrated her. This incident resulted in Count 8 for rape. The fourth incident involved McIntosh pointing to the private parts of a Barbie doll, describing to A.D. what he was going to do to her, and then sexually assaulting her. Because A.D. could not remember when this incident occurred, the State alleged that this incident occurred between the time McIntosh moved into the home and when he moved out. This incident resulted in Counts 11 through 14, aggravated criminal sodomy-oral, aggravated criminal sodomy-anal, rape, and aggravated indecent liberties. Finally, the fifth incident elected by the State occurred in the spare room of A.D.'s home on a mattress. This incident resulted in Counts 15 through 18, aggravated criminal sodomy-oral, aggravated criminal sodomy-anal, rape, and aggravated indecent liberties. The jury convicted McIntosh of the Counts 11 through 14 relating to the Barbie doll incident.

We find that because the State elected the particular criminal act upon which it relied for each charge, the trial court was not required to instruct the jury that all of them must agree that the same underlying criminal act was proven beyond a reasonable doubt. Because each charge was predicated on a particular criminal act, we are assured that the jury unanimously agreed to the underlying criminal act giving rise to each conviction. As a result, McIntosh's argument that the jury rejected the allegations for specific months, and instead convicted him on one of each general allegation covering the widest time frame, is without merit. The trial court did not err in failing to give a multiple acts unanimity instruction.

Affirmed.