UNITED STATES of America, Plaintiff,

v.

Sandra S. SAWYER, Defendant.

No. 4:CR 93–3027.

United States District Court, D. Nebraska.

Sept. 1, 1993.

Thomas J. Monaghan, U.S. Atty., D. Neb., Alan L. Everett, Asst. U.S. Atty., Lincoln, NE, for plaintiff.

Jeffrey A. Silver, Omaha, NE, for defendant.

**MEMORANDUM AND ORDER**

KOPF, District Judge.

This memorandum and order will supplement and confirm the actions I took on August 31, 1993, declaring a mistrial after I found that the government had violated Rule 16 of the Federal Rules of Criminal Procedure.

The defendant in this case is charged with making false statements to a federally insured bank for the purpose of influencing a bank in violation of 18 U.S.C. § 1014. The evidence indicated that a third party delivered portions of unfiled tax returns concerning the defendant to the bank as a part of a loan application. Thereafter, the bank lent money to a corporation owned by the defendant. The government was prepared to prove that no tax returns had been filed for the years in question. The government's theory was that submission of portions of unfiled tax returns constituted false statements to the bank with regard to the corporate loan.

During the second day of trial, the government found a critical item of evidence—a

personal guaranty apparently signed by the defendant. The prosecutor conceded that without this document the government could not prove its charge that the defendant made a material false statement to the bank since the debt upon which the charge was based was incurred by a corporation.[1]

This item of evidence was in the files of the bank. There is little doubt that the government had easy access to the bank's files because the bank had made a criminal referral of the case and the government had procured copies of various other documents from the bank, at least one of which mentioned the guaranty.

During direct examination of a bank officer in the government's case in chief, it became clear to the government that if no guaranty existed its case was at an end. After the court granted the government's request for a recess, the government found the guaranty. Despite the fact that the government knew or should have known of the existence of the guaranty because the government had a loan memorandum which referred to the guaranty and the government could not prove its case without it, the government apparently never looked for the document until its case was about to come to an end during the second day of trial.

As might be expected, the government indicated that it intended to use the guaranty during trial. The defendant objected vigorously to use of the guaranty, claiming unfair surprise[2] and a violation of Federal Rule of Criminal Procedure 16(a)(1)(C). Rule 16(a)(1)(C) states in pertinent part that upon request the government must turn over prior to trial documents which are "within the possession, custody, or control of the government" and which are "intended for use by the government as evidence in chief at the trial." The government responded that it never had "possession, custody or control" of the guaranty before trial, and thus had no Rule 16 obligation to turn over the document any earlier than when the government belatedly discovered it.

■ I assume, without deciding, that the government did not have "possession, custody or control" of the guaranty until the second day of trial. However, I do not believe this lack of "possession, custody or control" saves the government from a finding that it violated Rule 16 because the government was subject to a court order that defined the time when the government was to be prepared for trial and have Rule 16 documents available for production.

Under the headings "Regulation of Discovery" and "Protective and Modifying Orders," Rule 16(d)(1) provides in pertinent part that: "Upon a sufficient showing the court may at any time . . . make such other order as is appropriate." Moreover, Federal Rule of Criminal Procedure 12(b)(4) provides that disputed "[r]equests for discovery under Rule 16" *must* be taken up by motion prior to trial, and pursuant to Rule 12(e), such a motion "shall be determined before trial unless the court, for good cause, orders that it be deferred." Rule 12(c) explicitly gives the court authority to set a time for making motions. Therefore, I conclude that the court had the authority to enter an order requiring the government to be prepared to comply with Rule 16 prior to trial.

In this case, United States Magistrate Judge David L. Piester, ordered in April, 1993, that: "Within ten (10) days from this date, counsel shall confer and accomplish the automatic discovery provided for in Rule 16." (Filing 5, ¶ 2.) In that same order, Judge Piester set a motion deadline in the event of some dispute "after compliance with Rule 16." (Filing 5, ¶ 3.) The motion deadline has long since passed.

It is agreed that both parties invoked Rule 16. Further, defense counsel represents that the defendant has complied with her reciprocal Rule 16 obligations, and the government does not argue otherwise. It is obvious that the bank was cooperating fully with the government and that the loan file was open and easily accessible to the government at all times. It is further undisputed that the

---

**1.** One wonders how the defendant was indicted without this document.

**2.** Counsel for defendant represents that he never saw the guaranty before and that his client denied its existence.

guaranty was critical to the prosecution and not some peripheral piece of evidence the significance of which could only be determined during trial. Finally, it is clear that the government knew or should have known of the existence of the guaranty because the government had a bank memorandum which referred to it.

Judge Piester's order required the government to be reasonably prepared for trial to the extent necessary to comply with Rule 16 within ten days of the order. If the order is read otherwise, and if the government had no such obligation to be prepared, then the order is meaningless because the government could simply not prepare and thereby avoid pretrial discovery under Rule 16. Specifically, such a ruling would mean that the government could avoid compliance with Rule 16(a)(1)(C) by the simple expedient of not deciding until trial what evidence to use in its case in chief. This would defeat the obvious purpose of Rule 16. Furthermore, such a decision would frustrate not only Rule 16, but also Rule 12, which explicitly authorizes the court to set a time prior to trial for the resolution of Rule 16 discovery questions.

The guaranty was obviously the type of document "intended for use by the government as evidence in chief at the trial" within the meaning of Rule 16(a)(1)(C). Had the government been reasonably prepared, as required by Judge Piester's order, the guaranty would have been discovered and produced. Thus, a Rule 16 violation is established when Rule 16 is read in conjunction with Rule 12 and the progression order issued by Judge Piester.

As Judge Wisdom of the Fifth Circuit has stated, when approving a discovery order like the one issued by Judge Piester, "It is within the sound discretion of the district judge to make any discovery order that is not barred by higher authority." *United States v. Campagnuolo*, 592 F.2d 852, 857 nn. 1 & 2 (5th Cir.1979) (holding in part that the district court was not in error in suppressing a statement which should have been produced pursuant to a standing discovery order). There

is nothing in the text of Rule 16 or elsewhere that prohibits a trial court from ordering the government to be reasonably prepared to produce prior to trial documents otherwise required to be produced under Rule 16.

■ The question then becomes: What is the appropriate remedy? The court has a full range of sanctions available to it: "[T]he court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances." Fed.R.Crim.P. 16(d)(2).

When considering what sanctions to employ, the court should consider "the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by continuance, and any other relevant circumstances." 2 C. Wright, Federal Practice and Procedure—Criminal § 260, at 120 (2d ed. 1982).

In this case, there is no evidence that the government's action or lack of action resulted from intentional bad faith.[3] Rather, the error occurred because the government was not prepared. Presumably, the government has learned from its unintentional mistake. Thus, there is no reason to select sanctions which are designed to punish the government in hopes of coercing future compliance with Rule 16 and the court's progression orders. I turn then to the question of prejudice and the proper remedy to cure any prejudice.

The government suggested that a continuance would cure any prejudice, while defense counsel argued that only an order precluding the government from using the evidence would suffice. I disagree with both the government and counsel for the defense.

A continuance would not avoid prejudice to the defense because the defendant had formulated the heart of her defense strategy around the nonexistence of the guaranty. The defendant is a lawyer who would have known that statements she made to the bank about her personal financial situation would

---

**3.** Defense counsel graciously and candidly informed me that he did not claim the government

was acting in bad faith.

not be "material" to the bank's decision to lend to a corporation unless the bank had a right to look to her for repayment of the corporate debt.

The jury was advised during opening statements that the defendant probably would not testify because the government could not prove its case. Defense counsel argued that none of the proceeds of the loan to the corporation were received by the defendant personally. During trial, the defendant took the position that the borrower corporation, not the defendant herself, was interested in the transaction underlying the loan. In fact, the defense identified as an exhibit a letter from the defendant stating that while she had no interest in the transaction underlying the loan, her corporation did. Before the government became aware of the existence of the guaranty, the defense had successfully and repeatedly objected in front of the jury to the government's attempt to establish its existence by parole evidence, thereby unintentionally stressing the significance of the guaranty should it later be introduced into evidence.

If the guaranty were proved authentic and later received in evidence, the entire defense strategy would have to change, and the defense would have to shrink from remarks made to the jury during opening statements and positions taken before the jury during trial. When defense strategy in a criminal case changes in the middle of trial, there is a real and distinct likelihood that the jury will view the altered strategy of defense as groundless. This type of prejudice simply cannot be cured by a continuance.

On the other hand, an order precluding the government from using the guaranty would, as a practical matter, result in a judgment against the government on the merits. As counsel for the government conceded, without the guaranty the government cannot establish that the defendant's statements, even if false, were material.[4] An order precluding use of the guaranty, and dismissal of the case as a result, would constitute a potentially disproportionate windfall to the defendant and harm the legitimate public interest in seeing to it that criminal matters are resolved on the merits. See 2 C. Wright, Federal Practice and Procedure—Criminal § 260, at 125 & n. 10 (discussing the ABA Standards for Criminal Justice (2d ed. 1980) § 11–4.7, and quoting the Commentary, which states in part that: " 'The exclusion sanction is not recommended because its results are capricious. Thus, exclusion of prosecution evidence may produce a disproportionate windfall for the defendant....' ").

I inquired of both counsel whether a mistrial, without prejudice to retrial, was the appropriate remedy. Counsel for defendant stated that if I would not consider a preclusion order, a mistrial was the only solution. Counsel for the government stated that if I would not simply order a continuance, then he, too, agreed that a mistrial was the only solution. I declared a mistrial, without prejudice to retrial of the case.

I then consulted counsel and the defendant. The defendant and her counsel requested that this case be retried beginning December 6, 1993, with the defendant specifically stating on the record that the additional time was properly excludable under the Speedy Trial Act.

Accordingly,

IT IS ORDERED that:

(1) A mistrial having been declared, this case is set for retrial on December 6, 1993;

(2) The ends of justice will be served by granting defense counsel's request to set trial on December 6, 1993, and outweigh the interests of the public and the defendant in a speedy trial, and the additional *time* arising as a result of the granting of the request, the time between August 31, 1993, and December 6, 1993, shall be deemed *excludable* time in any computation of time under the requirement of the Speedy Trial Act, for the reason that defendant's counsel requires additional time to adequately prepare the case, taking into consideration due diligence of

---

4. In fact, a bank officer testified that the defendant's statements were "significant" to the bank because the bank was looking to the defendant personally to pay the note in the event the corporation could not pay. Of course, without a guaranty there is no reason to think that a bank would look to the defendant personally to pay the loan of a corporation.

counsel, the novelty and complexity of the case, and the fact that the failure to grant additional time might result in a miscarriage of justice. 18 U.S.C. § 3161(h)(8)(A) & (B).