No. 86,386

STATE OF KANSAS, *Appellee*, v. JAMES MCINTOSH, *Appellant*.

(58 P.3d 716)

Opinion filed December 6, 2002.

*Paige A. Nichols,* assistant appellate defender, argued the cause, and *Reid T. Nelson,* assistant appellate defender, *Steven R. Zinn,* deputy appellate defender, and *Jessica R. Kunen,* chief appellate defender, were with her on the briefs for appellant.

*Keith E. Schroeder,* district attorney, argued the cause, and *Thomas R. Stanton,* deputy district attorney, and *Carla J. Stovall,* attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant petitions for review from the Court of Appeals' affirmance of his convictions of rape, aggravated indecent liberties with a child, and two counts of aggravated criminal sodomy and his sentence of 316 months' imprisonment. Defendant claims (1) the trial court erred in finding that he failed to establish a compelling reason to require the victim to submit to an independent psychological examination; (2) the Court of Appeals erred in finding that a district court has no authority to order an independent physical examination of a victim in a criminal case; and (3) the trial court erred in admitting expert testimony.

The facts as set forth in the Court of Appeals' opinion provide sufficient background in this case. Further facts are incorporated in the opinion as necessary.

"McIntosh lived with Zoe D., his girlfriend, from December 1995 until July 1999. After McIntosh moved out, Zoe's daughter, A.D., told her mother that McIntosh had sexually abused her. Zoe reported the sexual abuse to the police.

"A.D. was interviewed by Detective Eric Buller, but the interviews were not recorded. A.D. told Detective Buller that McIntosh raped her using his finger and penis and that he anally and orally sodomized her. A.D. stated that the incidents occurred in several different locations throughout their residence and in the

family van. A.D. also told the detective that the sexual abuse began when McIntosh moved into the house when A.D. was 7 years old and ended when McIntosh moved out of the house when she was 10 years old.

"McIntosh was charged [in a complaint attested to by the prosecuting attorney] with five counts of rape, nine counts of aggravated criminal sodomy, five counts of aggravated indecent liberties with a child, and two counts of aggravated indecent solicitation of a child. Two counts of aggravated criminal sodomy and two counts of aggravated indecent solicitation of a child were dismissed at the preliminary hearing. Single counts of aggravated criminal sodomy and rape were dismissed by the State after it conceded that it could not prove that those offenses occurred in Reno County, Kansas. A jury convicted McIntosh of two counts of aggravated criminal sodomy and single counts of rape and aggravated indecent liberties with a child. McIntosh was sentenced to 316 months' imprisonment." *State v. McIntosh*, 30 Kan. App. 2d 504, 505-06, 43 P.3d 837 (2002).

The Court of Appeals affirmed McIntosh's convictions. McIntosh filed a timely petition for review. We granted review solely upon the three issues briefed to this court. See K.S.A. 20-3018(c); Supreme Court Rule 8.03(a)(5)(c) (2001 Kan. Ct. R. Annot. 56).

## DISCUSSION

Prior to trial, McIntosh filed a motion requesting both a physical and psychological examination of the victim, A.D. The trial judge denied the motion.

Psychological Examination

A trial court's denial of a defendant's motion to compel the victim, who is not a party in the State's criminal action but is often referred to as the complaining witness or complainant, in a sex abuse case to undergo a psychological examination is reviewed for abuse of discretion. See *State v. Gregg*, 226 Kan. 481, 489, 602 P.2d 85 (1979); *State v. Bourassa*, 28 Kan. App. 2d 161, 164, 15 P.3d 835 (1999), *rev. denied* 269 Kan. 934 (2000). The party who asserts the court abused its discretion bears the burden of showing such abuse. *State v. Thompkins*, 271 Kan. 324, 334-35, 21 P.3d 997 (2001). "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, it cannot be said that the trial court abused its discretion." *State v. Doyle*, 272 Kan. 1157, 1168, 38 P.3d 650 (2002).

In *Gregg*, this court was faced, as a matter of first impression, with whether the trial court abused its discretion in denying the defendant's motion for the victim in a criminal case involving a sex crime to submit to a psychiatric examination. The victim in *Gregg* was an 8-year-old girl who was the sole witness to corroborate the charges against the defendant. The *Gregg* court first looked to other jurisdictions for guidance and noted that other jurisdictions fell into one of the following three categories: (1) The court has no inherent power to compel a psychiatric examination; (2) the defendant has an absolute right to an order compelling a psychiatric examination; and (3) the trial judge has the discretion to order a psychiatric examination of a complaining witness where compelling reason is shown. The court noted that the minority view was that the court had no inherent power to compel a psychiatric examination, while the majority of jurisdictions recognized that the trial judge has discretion to order a psychiatric examination when a compelling reason exists. 226 Kan. at 485-87.

The *Gregg* court adopted the majority view, stating:

"We, too, adopt the 'middle ground' and hold a trial judge has the discretion to order a psychiatric examination of the complaining witness in a sex crime case if the defendant presents a compelling reason for such examination. Even if a trial court finds a compelling reason for ordering the psychiatric examination, the further safeguard as to its admissibility remains." 226 Kan. at 489.

The *Gregg* court, in finding that the trial court did not abuse its discretion in denying the defendant's motion for psychiatric examination of the victim, relied upon the fact that the defendant in that case failed to put forth evidence as to (1) the victim's mental instability; (2) the victim's lack of veracity; (3) the victim's having asserted similar charges against other men that were later proven to be false; or (4) other reasons why the victim should be required to submit to such an examination. 226 Kan. at 490.

In reaching its decision, the *Gregg* court quoted in length from *Ballard v. Superior Court*, 64 Cal. 2d 159, 49 Cal. Rptr. 302, 410 P.2d 838 (1966) (statutorily overruled by Cal. Penal Code § 1112 [West 1985]):

" 'We therefore believe that the trial judge should be authorized to order the prosecutrix to submit to a psychiatric examination if the circumstances indicate a

necessity for an examination. Such necessity would generally arise only if little or no corroboration supported the charge and if the defense raised the issue of the effect of the complaining witness' mental or emotional condition upon her veracity. Thus, in rejecting the polar extremes of an absolute prohibition and an absolute requirement that the prosecutrix submit to a psychiatric examination, we have accepted a middle ground, placing the matter in the discretion of the trial judge.' 64 Cal. 2d at 17[6]-177, []." *Gregg*, 226 Kan. at 489.

See *State v. Rucker*, 267 Kan. 816, 822, 987 P.2d 1080 (1999) (recognized trial judge has discretion to order psychological examination of victim in sex crime case if defendant presents compelling reason); *State v. Lavery*, 19 Kan. App. 2d 673, Syl. ¶ 1, 877 P.2d 443, *rev. denied* 253 Kan. 862 (1993); see Annot., 45 A.L.R. 4th, 310.

Unlike the California Legislature, the Kansas Legislature has not statutorily overruled the 22-year-old decision in *Gregg*. Thus, it can be said that the legislature approves of the court ordering such examinations. *Cf. In re Adoption of B.M.W.*, 268 Kan. 871, 881, 2 P.3d 159 (2000) (when legislature fails to modify statute to avoid standing judicial construction of statute, legislature is presumed to agree with court's interpretation).

The trial court in this case found:

"Here, the defense hasn't put on any evidence or any reason whatsoever that would get to a level of compelling. The defense is more than free at trial to attack the findings of Horizons [John Theis], and they are more than free to attack Dr. Glover's examination. But the fact that this defendant simply wants to have those findings verified is not a compelling reason to have a little eleven-year-old girl subjected to a psychological exam and particularly to a physical exam."

Regarding this issue, the Court of Appeals stated:

"Here, McIntosh argues that an independent psychological examination was required because a State witness completed a sexual abuse evaluation of A.D. and that he wanted his own expert to evaluate A.D. Specifically, McIntosh wanted an independent psychological examination of A.D. to determine whether A.D. suffered from post traumatic stress disorder as found by the State's witness. In addition, McIntosh wanted to ascertain the effect of the repeated questioning of A.D.'s memory of the alleged events. The trial court denied McIntosh's motion for a psychological examination of A.D. after finding that none of the factors cited by the *Gregg* court were argued by McIntosh.

"We find that the trial court correctly determined that McIntosh failed to establish a compelling reason for A.D. to submit to an independent psychological examination. At the hearing on the motion for a psychological examination, Mc-

Intosh did not argue that A.D. was mentally unstable, that she lacked veracity, or that she had made false charges against other men. Moreover, the grounds argued by McIntosh did not constitute a compelling reason to require an independent psychological examination. McIntosh could have attacked the finding of post traumatic stress disorder without conducting an independent examination of A.D. Similarly, McIntosh could have cross-examined the State's witnesses concerning the psychological evidence as to the effect of repeated questioning of A.D.'s recollection of the alleged incidents. As a result, we find that McIntosh has failed to carry his burden to show that the trial court erred in denying his motion for an independent psychological evaluation of A.D." *McIntosh*, 30 Kan. App. 2d at 507-08.

Before this court, McIntosh asserts the Court of Appeals erred because he did in fact state compelling reasons for an independent psychological examination, including mental instability and lack of veracity of the victim. McIntosh specifically cites to A.D.'s bedwetting, diagnosis of attention-deficit disorder for which she never took her medication, behavioral problems at school, and resentment for the fact her biological father was not around, that were present prior to McIntosh's moving into the home, as showing A.D.'s mental instability. In support of his claim that A.D. lacked veracity, McIntosh points out: (1) A.D. did not report her allegations until 2 months after McIntosh moved out of the home; (2) A.D. demonstrated friendly feelings toward McIntosh before and after the alleged abuse; (3) A.D. gave implausible, inconsistent, and continually inflated accounts of what allegedly happened between herself and McIntosh; and (4) the medical evidence was inconsistent with A.D.'s complaints of anal sodomy. Additionally, McIntosh claims that because A.D. was subjected to multiple psychological examinations, independent examination was necessary to determine (1) the validity of the State's examining experts' conclusions and (2) whether A.D.'s recollections had been altered by the multiple previous interviews.

Kansas courts have addressed similar assertions in other cases involving child victims of sexual abuse. See *Rucker*, 267 Kan. 822-23, (no abuse of discretion in denying defendant's motion for independent psychological examination where defendant contended victim had been under psychological care related to alleged acts, nature of victim's testimony was critical to defense, victim had psy-

chological motivations for making the charge, and evidence would be relevant to issue of credibility of victim); *Gregg*, 226 Kan. at 490 (no abuse of discretion where no compelling reason for independent psychiatric examination was shown or alluded to; motion was "clearly fishing expedition embarked upon in the hope something damaging and admissible in the trial would be unearthed"); *Lavery*, 19 Kan. App. 2d 673 (no abuse of discretion in denying defendant's motion for independent psychiatric examination where defendant contended and put forth evidence that victim was inappropriately exposed to sex and was using knowledge to falsely accuse, was unsupervised most of the summer, used foul language, was possibly molested by another man, and had told false story about killers in the school basement to neighborhood girls; trial judge had also noted there was episode of victim " 'playing doctor' " with neighborhood children); *State v. Blackmore*, 15 Kan. App. 2d 539, 542, 811 P.2d 54, *aff'd in part and rev'd in part* 249 Kan. 668, 822 P.2d 49 (1991) (no abuse of discretion in denial of defendant's motion for independent psychiatric examination where victim had been taken to health center for treatment of behavioral problems and had problematic behavior that consisted of hyperactivity, sleeplessness, bowel movements in his pants, and gagging himself at night until he vomited); *cf. Bourassa*, 28 Kan. App. 2d at 167 (abuse of discretion in denying defendant's motion for independent psychological examination where defendant proffered evidence of victim's mental instability, which involved recent charge that her father had sexually molested her, that she had mutilated two kittens the previous summer, and that she had tendency to soil herself; victim was taking Prozac and undergoing mental health counseling for behavioral disorders at time of motion; and victim's sister contradicted victim's testimony as to abuse).

The October 1999 psychological examination of A.D. performed by John Theis, a licensed clinical social worker, was videotaped and provided to the defense. McIntosh was able to cross-examine Theis and other State's witnesses who interviewed A.D. In addition, McIntosh had the opportunity to put forth his own experts to testify as to whether Theis' conclusions were accurate. We note that McIntosh did call Robert Barnett, a licensed clinical psychologist, as

a witness to demonstrate to the jury that children are easily influenced during the interview process; that the most important interview is the first interview, which in this case was not recorded; that repeat interviews can affect the accuracy of the information conveyed; and that it is well understood that there are no behaviors or groups of behaviors that are exhibited by sexually abused children that are not also exhibited by children who are not abused.

The testimony of the individuals who interviewed and counseled A.D. did not reflect that there was an attempt to influence A.D.'s account of the events. In general, A.D.'s accounts of the abuse were consistent throughout all interviews and at trial. After reviewing the record, we affirm the Court of Appeals' finding that the trial court did not abuse its discretion in finding that McIntosh did not establish a compelling reason for A.D. to submit to an independent psychological examination.

### Physical Examination

In his motion requesting a physical examination of the victim, McIntosh relied for support upon *Gregg*, 226 Kan. 481, and K.S.A. 2001 Supp. 22-3212. At the hearing on the motion, defense counsel argued that the physical examination conducted by Dr. Reagan Glover was not "of a definite character to say that [A.D.] was sexually abused." Defense counsel noted that there was no photographic record of the injuries sustained to A.D. Defense counsel asserted that under such circumstances McIntosh's due process right to challenge the State's physical examination evidence of the victim required an independent examination. The State noted that the defense failed to state the relevance of a physical examination conducted more than a year after the cessation of abuse. As stated previously, the trial court, relying upon *Gregg*, found that McIntosh also failed to meet his burden of establishing a compelling reason for an independent physical examination.

After his conviction, McIntosh asserted in his motion for judgment of acquittal or new trial that the trial court's denial of his motion for physical examination denied him the opportunity to confirm or refute the findings of Dr. Glover. The motion was denied by the trial judge.

Before the Court of Appeals, McIntosh claimed the trial court's denial of an independent examination of the victim infringed upon his due process rights under the United States and Kansas Constitutions. For support, McIntosh relied upon the Kansas Code of Civil Procedure, specifically K.S.A. 2001 Supp. 60-235, and *Turner v. Com.*, 767 S.W.2d 557 (Ky. 1988). Furthermore, McIntosh asserted the standard for ordering the examination was "good cause" rather than "compelling reason."

The State argued that K.S.A. 2001 Supp. 60-235 applied only to civil matters. The State maintained that the issue was not a constitutional question as McIntosh claimed, but an evidentiary ruling that is reviewed for abuse of discretion. The State asserted that following the reasoning set forth in *Gregg* regarding psychiatric examinations, McIntosh failed to set forth a compelling reason for an independent physical examination.

The Court of Appeals agreed with the State and held that K.S.A. 2001 Supp. 60-235 does not apply in criminal cases. *McIntosh*, 30 Kan. App. 2d at 507. The Court of Appeals also determined that the decision of the trial court was subject to review for abuse of discretion because it involved an evidentiary ruling and not a violation of a constitutional right. The Court of Appeals did not, however, address the trial court's denial of McIntosh's motion for independent physical examination based upon the rationale for a psychiatric examination under *Gregg*. Instead, the Court of Appeals examined the statutes and determined that the district court did not have the authority to order an independent physical examination under K.S.A. 2001 Supp. 22-3212, which governs discovery in a criminal action and provides:

"(a) Upon request, the prosecuting attorney shall permit the defendant to inspect and copy or photograph the following, if relevant: . . . . (2) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, the existence of which is known, or by the exercise of due diligence may become known, to the prosecuting attorney . . . .

"(b) Upon request the prosecuting attorney shall permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies, or portions thereof, which are or have been within the

possession, custody or control of the prosecution, and which are material to the case and will not place an unreasonable burden upon the prosecution."

In reaching its conclusion, the Court of Appeals relied upon *State v. Dressel*, 241 Kan. 426, 738 P.2d 830 (1987). *McIntosh*, 30 Kan. App. 2d at 507. We note that the lack of jurisdiction was not argued to the district court, nor was the *Dressel* case cited by either party on appeal.

In *Dressel*, 241 Kan. 426, this court was faced with whether a trial court had the authority under K.S.A. 22-3212 to compel discovery from the complaining witness in a criminal case. The *Dressel* court concluded it did not. In *Dressel*, attempted felony theft and felony theft was alleged by Cargill, Inc. (Cargill). The defendants sought discovery of certain items from Cargill and sanctions for destruction of evidence. The district court noted that Cargill was not a party to the criminal case and, therefore, was outside its jurisdiction. The court denied the defendants' discovery motions and refused to impose sanctions. The court concluded that the defendants had the ability to obtain relevant records of a nonparty by use of subpoena.

On appeal, the Court of Appeals held that because Cargill had hired an attorney to assist in the prosecution pursuant to K.S.A. 19-717 and this attorney had knowledge and control of the items requested by the defendant, the items were subject to discovery under K.S.A. 22-3212. On petition for review, this court reversed the Court of Appeals and affirmed the trial court, noting that because Cargill was not a party to the criminal prosecution, the trial court did not have the authority to compel discovery from Cargill under K.S.A. 22-3212. 241 Kan. at 432. The court concluded that an attorney employed under K.S.A. 19-717 to assist the prosecutor is bound by K.S.A. 22-3212 to turn over items subject to K.S.A. 22-3212 that are within that attorney's possession, custody, or control. 241 Kan. at 434.

In rendering its decision, the *Dressel* court stated:

"Failure to impose the discovery mandates of K.S.A. 22-3212 on a complaining witness does not foreclose discovery; it merely forecloses one method of discovery. Criminal defendants have the right to subpoena witnesses and to compel the production of documents. This right is statutorily provided by K.S.A. 22-3214 and

was explicitly recognized by this court in *State v. Humphrey*, 217 Kan. 352, 361, 537 P.2d 155 (1975)." 241 Kan. at 432.

When determining that the district court did not have jurisdiction to subject the victim to a physical examination in this case, the Court of Appeals noted that K.S.A. 2001 Supp. 22-3212 fails to provide that an independent physical examination may be ordered but specifically provides for numerous others items that are subject to discovery. Therefore, pursuant to the maxim *"expressio unius est exclusio alterius*, which means 'the inclusion of one thing implies the exclusion of another,' " the Court of Appeals held K.S.A. 2001 Supp. 22-3212 precluded the district court from ordering an independent physical examination of the victim. *McIntosh*, 30 Kan. App. 2d at 510.

This reasoning assumes that K.S.A. 2001 Supp. 22-3212 sets forth every possible item subject to discovery in a criminal case. The Court of Appeals failed to note that this court specifically recognized the contrary in *State v. Davis*, 266 Kan. 638, Syl. ¶ 1, 972 P.2d 1099 (1999). The *Davis* court was faced with determining whether the district court had the authority to order the county attorney to mail documents to the defense that were clearly subject to discovery and under the control of the State. K.S.A. 2001 Supp. 22-3212 provides that the prosecutor must permit the defense to "inspect and copy, or photograph" the documents, but does not specifically provide that the county attorney must mail the documents. The *Davis* court held that the district court had the discretionary authority to order the county attorney to mail the documents.

In reaching its decision, the *Davis* court observed:

"K.S.A. 22-3212 is based on Fed. R. Crim. Proc. 16. See *State v. Jones*, 209 Kan. 526, 528, 498 P.2d 65 (1972). The Federal Advisory Committee, in its notes on Rule 16, states:

'[Rule 16] is intended to prescribe the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases. For example, subdivision (a)(3) is not intended to deny a judge's discretion to order disclosure of grand jury minutes where circumstances make it appropriate to do so.' Federal Advisory Committee's Notes on 1974 Amendment on Rule 16.

"Federal courts interpreting Rule. 16 have held that it is within the sound discretion of the district judge to make any discovery order that is not barred by higher authority. See *United States v. Campagnuolo*, 592 F.2d 852, 857 n.2 (5th Cir. 1979); *United States v. Sawyer*, 831 F. Supp. 755, 757 (D. Neb. 1993)." *Davis*, 266 Kan. at 642-43.

See also *United States v. Richter*, 488 F.2d 170, 173 (1973) ("The Federal Rules of Criminal Procedure are intended to constitute a comprehensive procedural code for criminal cases in the federal courts. But even the rules themselves do not purport to set outer limits of the power of the court.").

The text of K.S.A. 2001 Supp. 22-3212 is not all-inclusive. The fact submission to physical examinations is not specifically provided for under the statute does not mean the district court does not have the authority to order the examination in a particular case. Therefore, the Court of Appeals erred in relying upon K.S.A. 2001 Supp. 22-3212 to divest the district court of the authority to order a physical examination.

McIntosh's best argument is that the Court of Appeals' decision is inconsistent with this court's decision in *Gregg*. Although the decision and reasoning of *Gregg* involved a psychiatric examination, *Gregg* is the logical point at which to begin in determining whether a district court in this state has the authority to order a victim in a sex crime case to submit to a physical examination upon a defendant's request. The reasoning of other jurisdictions that have addressed the issue of the more intrusive physical examination is also relevant.

In *State v. Barone*, 852 S.W.2d 216 (Tenn. 1993), the highest court in Tennessee was faced for the first time with this exact issue. Barone was convicted of two counts of aggravated rape and one count of aggravated sexual battery involving his minor daughter. On appeal, Barone contended the trial court erred in denying his motion to have the victim submit to a physical examination. The victim had been examined previously, just shortly after the abuse was reported.

In rendering its decision that the trial court had the authority to order a victim to submit to a physical examination, the *Barone* court stated:

"We begin our analysis by observing that, as a matter of background, 'the common law does not authorize a court to require the physical examination of a witness, because discovery in criminal cases was unknown to the common law.' *State v. Smith*, 260 So. 2d 489, 491 (Fla. 1972). Nor does there exist in Tennessee a statutory right to a compelled physical examination of a witness by a criminal defendant, either in the Tennessee Rules of Criminal Procedure or otherwise. It is also true that there are several state courts that, in the absence of such a statutory right, have held there is no constitutional or other basis for defense-demanded physical examinations of alleged sex-offense victims. See *State v. Smith*, 260 So.2d 489, 489-90 (Fla. 1972); *State v. Holmes*, 374 N.W.2d 457, 459 (Minn. App. 1985); *State, ex rel. Wade v. Stephens*, 724 S.W.2d 141, 143 (Tex. Crim. App. 1987).

"There are no reported cases in Tennessee addressing this issue. However, there are a number of Tennessee cases dealing with a defendant's right to request a psychological examination of sex-abuse complainants. The analysis to be followed by a trial court in ruling on that type of request is set out in *Forbes v. State*, 559 S.W.2d 318, 321 (Tenn. 1977), where this Court followed the general rule when it stated:

'We hold that in any case involving a sex violation, the trial judge has the inherent power to compel a psychiatric or psychological examination of the victim, where such examination is necessary to insure a just and orderly disposition of the cause. Such power should be invoked only for the most compelling of reasons, all of which must be documented in the record. This discretion should be exercised sparingly.'

"A number of state courts have determined that as in the case of psychological examinations, a trial court may exercise its discretion to order an involuntary physical examination of sex-abuse complainants when the defendant demonstrates a compelling reason for the examination. *People v. Chard*, 808 P.2d 351 (Colo. 1991); *State v. DRH*, 127 N.J. 249, 604 A.2d 89 (1992); *State v. Ramos*, 553 A.2d 1059 (R.I. 1989); *State v. Delaney*, 187 W. Va. 212, 417 S.E.2d 903 (1992). The decision of a trial court judge to grant or deny a motion for an independent physical examination should not be reversed on appeal absent a manifest abuse of discretion. *Lanton v. State*, 456 So. 2d 873, 874 (Ala. Crim. App. 1984); 75 C.J.S. *Criminal Law* § 80 (1952).

"State courts have adopted a number of approaches to determining whether an accused sex-offender is entitled to a compulsory physical examination of a complainant. First is the material assistance inquiry, which requires a physical examination when it could lead to evidence of material assistance to the defendant. See *Turner v. Commonwealth*, 767 S.W.2d 557 (Ky. 1988). Second is the compelling need inquiry, which balances the defendant's interest in the evidence against the burden the examination imposes upon the complainant. Some states include a factor-based balancing approach. See *People v. Glover*, 49 Ill. 2d 78, 273 N.E.2d 367 (1971); *State v. Ramos*, 553 A.2d 1059 (R.I. 1989); *State v. Garrett*, 384 N.W.2d 617 (Minn. App. 1986). Third is the exculpatory approach, which allows a defendant a physical examination only when the evidence likely to be

obtained could absolutely bar his conviction. See *People v. Nokes*, 183 Cal. App. 3d 468, 228 Cal. Rptr. 119 (1986); *State v. Hewett*, 93 N.C. App. 1, 376 S.E.2d 467 (1989). Fourth is the medically deficient standard, which permits an examination only if the prosecutor's examination failed to conform to proper medical procedures. See *State v. Drab*, 546 So.2d 54 (Fla. Dist. Ct. App. 1989), *rev. denied*, 553 So.2d 1164 (Fla. 1989). See also Note, *A Fourth Amendment Approach to Compulsory Physical Examinations of Sex Offense Victims*, 57 U. Chi. L. Rev. 873 (1990).

"Initially, we are satisfied that the *Forbes* rule of compelling need should be extended to physical examinations of sex-abuse complainants. We think the practice of granting such physical examinations should be engaged in with great care and only upon a showing of compelling need by the defendant. Other courts have observed, and we agree, that the highly intrusive nature of a physical exam raises the same concerns about emotional trauma, embarrassment, and intimidation to the child victim that are present with psychological examinations. *People v. Chard*, 808 P.2d 351, 355 (Colo. 1991). In addition, we think those concerns should be balanced against the likelihood of the examination producing substantial material evidence that will be beneficial to the defendant's case. *Id.* We recognize that there is a delicate balance to be struck, and that the critical inquiry is whether the evidence sought by the defendant is of such importance to his defense that it outweighs the potential for harm caused by the invasion of the complainant's privacy, including the prospect that undergoing a physical examination might be used for harassment of a prosecuting witness. See *Turner v. Commonwealth*, 767 S.W.2d 557, 559 (Ky. 1988)." 852 S.W.2d at 221-22.

We note that the result in *Barone* is not unique; other jurisdictions have also reached similar conclusions. See *State v. Chard*, 808 P.2d 351, 357 (Colo. 1991); *People v. Visgar*, 120 Ill. App. 3d 584, 587, 457 N.E.2d 1343 (1983); *State v. D.R.H.*, 127 N.J. 249, 259-60, 604 A.2d 89 (1992); *State v. Ramos*, 553 A.2d 1059, 1062 (R.I. 1989);. However, there are other jurisdictions that refuse to recognize that a defendant could ever have the right to obtain an order for a victim to submit to a physical examination. See *State v. Joyce*, 97 N.C. App. 464, 467, 389 S.E.2d 136 (1990); *State ex rel. Wade v. Stephens*, 724 S.W.2d 141, 144-45 (Tex. App. 1987); *Clark v. Commonwealth*, 262 Va. 517, 521, 551 S.E.2d 642 (2001).

Following the reasoning stated in *Gregg* and case law from other jurisdictions, we determine that where there is a compelling reason, the district court has the discretion to order a victim in a sex crime case to submit to an independent physical examination. We

note that it is important for district courts to recognize that the victim in a criminal case is not a party to the action.

This court must now determine whether the district court abused its discretion in denying McIntosh's motion for independent physical examination. The factors from *Gregg* that establish a compelling reason for an independent psychological examination do not apply to the more intrusive physical examination. In addition, there is a notable distinction between psychological examiners and physical examiners. A psychological examiner is an expert witness specifically retained by the prosecution for the purpose of examining the victim. A physical examination, however, is usually conducted by a medical doctor and hospital staff. The standard of review over a trial court's decision to grant or deny a motion for discovery is abuse of discretion. See *Davis*, 266 Kan. at 643-44; *Gregg*, 226 Kan. at 489; *Bourassa*, 28 Kan. App. 2d at 168.

The Rhode Island Supreme Court set forth factors that a trial court should consider in determining whether to grant a defendant's motion for independent physical examination:

"(1) the complainant's age, (2) the remoteness in time of the alleged criminal incident to the proposed examination, (3) the degree of intrusiveness and humiliation associated with the procedure, (4) the potentially debilitating physical effects of such examination, and (5) any other relevant considerations." *Ramos*, 553 A.2d at 1062.

See also *State v. Delaney*, 187 W. Va. 212, 217, 417 S.E.2d 903 (1992) (in addition to factors set forth in *Ramos*, also consider emotional effects of examination on victim, probative value of examination to issue before court, and evidence already available for defendant's use).

McIntosh argued the following reasons before the trial court as support for an independent physical examination being warranted: (1) Examination of Dr. Reagan Glover did not show sexual abuse was definite; (2) there was no photographic evidence of injuries sustained by A.D.; (3) independent examination was the best way to challenge the prosecution's evidence; (4) denial of the examination was a violation of due process; (5) defendant was denied the opportunity to challenge the evaluation of Dr. Glover; (6) Dr. Glover found no physical evidence to corroborate A.D.'s claim of

repeated anal sodomy; (7) A.D. delayed reporting the abuse until 2 months after McIntosh left the home; and (8) A.D.'s mother's animosity toward McIntosh was the source of A.D.'s allegations.

Before the Court of Appeals, McIntosh took issue with the fact Dr. Glover was made aware of the purpose of the examination prior to conducting it and was guided through the examination by A.D.'s providing a history of the events. McIntosh cited for the first time to a study that concluded that a diagnosis is often affected and changed when a history of the examinee is given. Additionally, McIntosh cited studies and articles that he contended were are at odds with the testimony and conclusions of Dr. Glover. At trial, McIntosh did not present or attempt to present evidence to refute Dr. Glover's conclusions.

The Court of Appeals noted in its decision that denying McIntosh an independent physical examination was not unfair because the objective results of the State's examination of A.D. were available through discovery, McIntosh could have cross-examined Dr. Glover on the results of the examination, and McIntosh had presented experts who had reviewed Dr. Glover's findings to refute those findings. *McIntosh,* 30 Kan. App. 2d at 510-11.

A.D. was 11 years old at the time of trial. The abuse was claimed to have begun within a couple of months of McIntosh moving into the home in December 1995. A.D. was 7 years old at the time. The abuse was alleged to continue until a couple of weeks before McIntosh moved out of the home in July 1999, when A.D. was 10 years old. The physical examination was performed on September 28, 1999. The complaint was filed against McIntosh in November of 1999, yet McIntosh failed to request an independent physical examination until September of 2000. Thus, a year passed between the first examination which occurred only 2 months after the cessation of the alleged abuse and McIntosh's request for a subsequent examination. McIntosh did not put forth an explanation for the delay, nor did he put forth any support to refute the natural assumption that signs of the physical abuse would be different, if not less evident, a year later.

Requiring an 11-year-old victim to submit to a physical examination would undoubtedly be humiliating and traumatizing. Mc-

Intosh attempts to downplay the humiliation and trauma that A.D. would experience by noting that A.D. has already been examined by Dr. Glover. This assertion is not convincing. Since the cessation of abuse, A.D. has undoubtedly begun to heal both physically and mentally. An additional physical examination could only serve as a setback to the healing process and should only be granted upon a showing of compelling reason. In a situation such as this, where there has already been a physical examination performed, the argument that a second physical examination is necessary must be especially compelling. Factors that a court must consider in determining whether to grant a defendant's motion for independent physical examination are (1) the victim's age; (2) the remoteness in time of the alleged criminal incident to the proposed examination; (3) the degree of intrusiveness and humiliation associated with the procedure; (4) the potentially debilitating physical and emotional effects of such examination; (5) the probative value of the examination to the issue before the court; (6) the evidence already available for the defendant's use; and (7) any other relevant considerations. The findings and testimony of the medical doctor who performed the prior physical examination for the State can, in most instances, be sufficiently challenged on cross-examination and through defense expert witness testimony.

McIntosh had the burden of proving the trial court abused its discretion. See *Thompkins*, 271 Kan. at 334-35. McIntosh did not meet this burden. Thus, the trial court did not abuse its discretion in finding that McIntosh failed to put forth a compelling reason for A.D. to submit to an independent physical examination.

## Admission of Expert Witness Testimony

McIntosh contends the trial court erred in admitting over objection the testimony of John Theis, a licensed clinical social worker, that A.D. exhibited behavioral patterns consistent with a child who had been sexually abused.

Qualification of a witness as an expert and admission of expert witness testimony is within the broad discretion of the trial court. See *State v. Heath*, 264 Kan. 557, 573, 957 P.2d 449 (1998); *State v. Rice*, 261 Kan. 567, 589, 932 P.2d 981 (1997).

"Two requirements must be present before expert testimony is admissible at trial. First, the testimony must be helpful to the jury. Second, before expert scientific opinion may be received into evidence at trial, the basis of that opinion must be shown to be generally acceptable within the expert's particular scientific field." *State v. Hodges*, 239 Kan. 63, Syl. ¶ 1, 716 P.2d 563 (1986).

Expert conclusions or opinions are inadmissible where the normal experiences and qualifications of lay persons serving as jurors permit them to draw proper conclusions from given facts and circumstances. *State v. Colwell*, 246 Kan. 382, 389, 790 P.2d 430 (1990). The trial judge allowed Theis to testify over McIntosh's objection. In denying McIntosh's motion for judgment of acquittal or new trial on this ground, the trial judge relied upon *State v. Reser*, 244 Kan. 306, 767 P.2d 1277 (1989).

In *Reser*, this court addressed whether there was an adequate foundation to qualify a State's witness as an expert on symptoms consistent with child sexual abuse. The State's witness was a licensed clinical specialist with 12 years of experience in the area of mental health, had a master's degree in social work, and had worldwide recognition in the field of child sexual abuse. The witness testified that sexually abused children have common patterns of behavior resulting from the trauma, including failing to report the abuse immediately. The witness testified that it was her opinion that the victim exhibited behavior consistent with a child who had been sexually abused. The *Reser* court looked to other jurisdictions in which expert testimony regarding characteristics of sexually abused children had been held proper to provide helpful information to the jury and concluded that the expert was "imminently qualified" as an expert to testify as to common patterns of behavior resulting from child sexual abuse and that this victim had symptoms consistent with those patterns. 244 Kan. at 315.

Before the Court of Appeals, McIntosh contended that there was no foundation for Theis' testimony that A.D. fit the profile of a sexually abused child. McIntosh acknowledged that the *Reser* court had specifically approved this type of testimony but contended that in the 10 years since *Reser*, research demonstrates that such testimony is no longer generally accepted.

The Court of Appeals held:

"McIntosh argues that this court should decline to follow *Reser* because the court failed to address whether characteristics of child sexual abuse have been generally accepted. McIntosh adds that *Reser* is a decade old, and research subsequent to the case shows that the supposed indicators of child sexual abuse cited in that case are not generally acceptable. While it may be true that there is not a universally accepted profile for sexually abused children, the *Reser* court held that expert testimony on common patterns of behavior by child victims of sexual assault is admissible as corroborating evidence of the abuse. This court is duty bound to follow our Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Maybin*, 27 Kan. App. 2d 189, 205, 2 P.3d 179, *rev. denied* 269 Kan. 938 (2000). Because our Supreme Court has not indicated that it is departing from its previous position that expert testimony on common patterns of behavior of child victims of sexual assault is admissible corroborating evidence, this court is duty bound to follow *Reser*.

"McIntosh suggests that this court follow *State v. Bressman*, 236 Kan. 296, 689 P.2d 901 (1984). In *Bressman*, a physician testified that in her opinion the complaining witness had been raped. On appeal, the defendant argued that the trial court erred in admitting the expert witness testimony because it was without sufficient foundation. The *Bressman* court agreed, finding that the trial court committed prejudicial error in permitting the expert witness testimony because there was not a sufficient foundation to qualify the physician as an expert to give such an opinion since there was no showing that she was trained as an expert in psychiatry and that she had examined the complaining witness for the purpose of rendering a diagnosis as to whether she evidenced rape trauma syndrome. 236 Kan. at 304, 689 P.2d 901.

"*Bressman*, however, is distinguishable from the instant case. The *Bressman* court recognized that under *State v. Marks*, 231 Kan. 645, 647 P.2d 1292 (1982), qualified expert psychiatric testimony regarding rape trauma syndrome is relevant and admissible. Although expert opinion testimony on rape trauma syndrome is admissible, the *Bressman* court found that the physician did not qualify as an expert witness because she was not trained in psychiatry and because she did not examine the victim for the purpose of rendering a psychiatric diagnosis. Accordingly, McIntosh's reliance on *Bressman* is misplaced because the case supports the admission of expert witness testimony as to the characteristics of sexual assault victims, provided the testimony is given by a qualified expert.

"As a result, we follow our Supreme Court precedent in *Reser* and hold that qualified expert witness testimony on the common patterns of behavior of a sexually abused child was admissible to corroborate the complaining witness' allegations. In addition, we find that Theis was qualified as an expert on child sexual abuse. Theis was a licensed clinical social worker with a master's degree in social work and had regularly conducted sexual abuse evaluations. In fact, Theis' qualifications were very similar to the qualifications of the expert witness in *Reser*, who was found to be a qualified expert on child sexual abuse. Accordingly, we find that Theis was qualified as an expert witness in this case.

"We further find that the trial court did not abuse its discretion in admitting Theis' testimony. There was a sufficient foundation for the expert witness testimony and Theis was qualified as an expert witness. Moreover, the expert testimony was not used to prove that A.D. was sexually abused, but rather was used to corroborate her allegations. As a result, we find that the trial court did not abuse its discretion in admitting expert witness testimony that A.D. fitted the profile of a sexually abused child." *McIntosh*, 30 Kan. App. 2d at 520-21.

As the trial court and Court of Appeals correctly recognized, *Reser* controls. Many of the cases from other jurisdictions relied upon by the *Reser* court remain good law today. See *Rodriquez v. State*, 741 P.2d 1200 (Alaska App. 1987); *State v. Radjenovich*, 138 Ariz. 270, 674 P.2d 333 (Ariz. App. 1983); *Poyner v. State*, 288 Ark. 402, 705 S.W.2d 882 (1986); *State v. LeBrun*, 37 Or. App. 411, 587 P.2d 1044 (1978), *rev. denied* 286 Or. 149 (1979). We note, however, *State v. Cressey*, 137 N.H. 402, 628 A.2d 696 (1993) (child abuse expert testimony may not be offered to prove child has been sexually abused; such evidence may only be used to explain behavioral characteristics commonly found in child abuse victims to preempt or rebut inferences the child was lying; recognized there was no difference between expert testifying the child was abused and testifying that child exhibited behaviors consistent with sexually abused children), and *State v. Michaels*, 264 N.J. Super. 579, 599, 625 A.2d 489 (1993) (held child abuse expert evidence is admissible only for rehabilitation purposes, *e.g.*, explaining traits often found in children who have been abused when trait may seem inconsistent with abuse).

McIntosh urges this court to reconsider the holding in *Reser*. For support, McIntosh cites numerous articles and cases from other jurisdictions which have concluded that such evidence should be inadmissible. McIntosh argues the identification of common characteristics associated with sexual abuse is unreliable and that some jurisdictions admit such evidence only to rehabilitate the victim.

On direct examination, Theis detailed the format he underwent in evaluating A.D. and the information obtained from the interview. Theis also testified on direct that there are common patterns of abuse among sexually abused children. Upon objection from the

defense, the prosecutor contended Theis was qualified to testify to such because of his extensive training in dealing with sexually abused children and his performance of numerous sexual abuse examinations of children. The trial judge found Theis qualified to testify as to whether there are established patterns.

Theis stated that the common patterns of abuse include: nightmares, extreme guilt, social withdrawal, acting-out behavior, fire-setting, avoidance of school, aggressive behavior, inappropriate sexual acting-out, as well as other symptoms not specifically set forth. Theis then testified, over defense objection, that in interviewing A.D. he had observed behaviors that were "consistent with" a child who had been sexually abused. The behavior that Theis was referring to consisted of A.D.'s extreme nervousness when talking about the abuse, tearful and emotional breakdown, sleep disturbance, fear for her safety, distressing thoughts about the abuse, distrust of others, hypervigilance (anticipatory anxiety—worry about negative events happening again), feelings of guilt, and delayed disclosure.

It must be noted that Theis testified on cross-examination that the behaviors he had identified as being consistent with children who have been sexually abused are also capable of being seen in children who have not been abused. Additionally, McIntosh put forth Robert Barnett, a licensed clinical psychologist, to testify that it is well understood that there is no single behavior or group of behaviors that are exhibited solely in sexually abused children.

In cases involving sexual abuse, the evidence is often centered entirely upon the credibility of the victim and the alleged abuser. Theis' testimony provided circumstantial support in favor of A.D.'s credibility by demonstrating that her behavior was not inconsistent with someone who had been sexually abused. Theis did not testify that in his opinion A.D. was abused. McIntosh, through testimony elicited on cross-examination and later in his case in chief, made the jury aware that the presence of such behaviors in a child victim does not prove sexual abuse. Although jurisdictions differ as to the allowance of such testimony, McIntosh does not state a significant reason for this court to exclude such evidence in Kansas.

The Court of Appeals did not err in finding that the trial court did not abuse its discretion in qualifying Theis as an expert for the purpose of testifying as to common behaviors among sexually abused children and allowing Theis to testify that A.D. exhibited behavior consistent with a sexually abused child.

The Court of Appeals and the district court are affirmed.